543 A.2d 1241

L.W.B., Petitioner *v*. M. Jean Sosnowski et al., Respondent.

Submitted February 23, 1988, to President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Lloyd William Bell*, petitioner, for himself.

*Ruth O'Brien*, Assistant Counsel, for respondent, Department of Public Welfare.

*James E. McErlane,* with him, *Ellen M. Resinski, Lamb, Windle* & *McErlane, P.C.,* for appellee, Lori Clifton Gibbons.

OPINION BY JUDGE CRAIG, June 13, 1988:

This child abuse registry expungement case involves a re-examination of the law relating to the admissibility of hearsay evidence before the administrative agency in such a proceeding.

L.W.B., without representation by counsel, appeals a decision of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) which adopted a hearing officer's recommendation not to expunge an indicated report of child abuse maintained under the Child Protective Services Law.[1] The Law requires maintenance of a central statewide registry containing records of all "founded"[2] and "indicated"[3] reports of child abuse.

The Chester County Office of Child and Youth Services (CYS) filed an indicated report of child abuse against L.W.B. after it had investigated allegations that he had abused his three-year old daughter, B.L.B. L.W.B. petitioned the Secretary of DPW to expunge the report, in accordance with section 15(d) of the Law, 11 P.S. §2215(d), claiming that it was inaccurate. After

---

[1] Act of November 26, 1975, P.L. 438 *as amended,* 11 P.S. §2201-2224.

[2] Section 3 of the Law, 11 P.S. §2203, defines "Founded report" as "a report made pursuant to this act if there has been any judicial adjudication based on a finding that a child who is the subject of the report has been abused."

[3] Section 3 of the Law defines "Indicated report" as "a report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare."

the department refused expungement, L.W.B. sought a hearing, at which he and the CYS investigator testified. The hearing officer concluded that substantial evidence supported the allegations against L.W.B., and recommended that the indicated report of child abuse remain in the registry.

Our scope of review requires that we determine whether DPW's adjudication comports with the applicable law, whether its findings are supported by substantial evidence, and whether the appellant's constitutional rights were violated. *Cruz v. Department of Public Welfare*, 80 Pa. Commonwealth Ct. 360, 472 A.2d 725, 727 (1984).

On appeal, L.W.B. presents both constitutional and evidentiary issues.

## 1. Constitutional Questions

The first constitutional claim is that L.W.B. was subjected to double jeopardy in having to pursue two separate appeals (the expungement matter before this court and an earlier appeal of the Family Services Plan proposed by CYS stemming from a single accusation of child abuse.) The concept of double jeopardy is peculiar to criminal law; it has no application to civil proceedings before an administrative agency. *Jordan v. Gore,* 288 Pa. Superior Ct. 86, 431 A.2d 300 (1981).

L.W.B. also contends that section 17 of the Law, 11 P.S. §2217, is so vague and indefinite that it violates due process and the Sixth Amendment. However, that section simply delineates the duties of child protective services; it does not deal with accusations against individuals.

L.W.B. argues that the statute does not provide safeguards against false accusations, that it is susceptible to selective enforcement, and that there is no statutory requirement that court action be initiated so that an ac-

cused abuser may "defend his due process rights under the presumption of innocence." Again, L.W.B. is transferring concepts of criminal law to administrative procedure. The Law seeks to protect children from abuse,[4] not to punish alleged abusers. Section 2215(d) provides a process for implicated persons to request that a report be amended, sealed or expunged, and provides for an appeal of the Secretary's decision.

Finally, L.W.B. claims that various other sections of the Law violate due process rights. L.W.B. is not specific as to which rights were at stake or how they were violated, stating only that the law should not allow a child to be removed from a loving parent without a showing of need for protection. In this argument, L.W.B. appears to be challenging matters relating to the custody suit before the court of common pleas. However, the appeal before this court relates strictly to the department's refusal to expunge the indicated report of child abuse.

## 2.  Evidentiary Issues

The central evidence question raised by L.W.B. is the claim that the hearing officer improperly relied on inadmissible hearsay evidence presented by the CYS investigator, and that, without such hearsay, there was no substantial evidence to support the officer's findings.

The allegations of abuse had arisen during a previously scheduled custody hearing before Judge LAWRENCE E. WOOD, Chester County Court of Common Pleas. Judge WOOD notified CYS, which began an investigation.

According to the record of testimony by Lori Clifton Gibbons, a CYS caseworker, before the DPW hearing officer in the matter here under review, Gibbons sep-

---

[4] 11 P.S. §2202.

arately interviewed L.W.B., his estranged wife, T.L.B., and their three children, M.K.B., C.B.B. and B.L.B. During an initial interview, conducted in a playroom environment, B.L.B. told Gibbons that "Daddy showed me how to feel good and rubbed me all over," demonstrating by rubbing a doll's stomach, arms, back chest and genitals. B.L.B. then said "I can't tell you the other things, I can't remember."

The age of B.L.B., when interviewed, was approximately three years, eight months.

Gibbons also testified that, at a second playroom interview, lasting two hours, B.L.B. told Gibbons that her father had shown her how to feel good, but "Daddy told me not to tell anybody." After some prompting, B.L.B. said that L.W.B. made her touch him in places; when asked where, B.L.B. replied "[o]n his bottom and his penis." When asked if she knew what a penis was, B.L.B. said no; but she said it was located "[o]n the bottom, in the front." B.L.B. pointed to the genital area on a female doll when Gibbons asked where a penis would be located. B.L.B. also pointed to the genital area on a male drawing, and asked Gibbons to draw one on the figure. When Gibbons drew a flaccid penis, B.L.B. said "[t]hat's not right—it's longer and it stands up." Gibbons drew an erect penis and B.L.B. said "that's right."

Gibbons asked B.L.B. what L.W.B. made her do to his penis. B.L.B. replied that she rubbed it and demonstrated with up and down strokes on her arm. B.L.B. said her father told her not to tell anyone when he asked her to rub his penis, that L.W.B. did not have clothes on when she did this, and that "when he gets pleased, it gets hard."

Because the actions and events conveyed by B.L.B., in the evidentiary capacity of a declarant, if deemed to be proved, would support the recommendation against

expungement, the key issue here is whether the testimony of witness Gibbons, summarized above, is admissible for the purpose of that proof.

The evidence difficulty here underscores the need for a progressive approach to determining the facts in these cases involving the expungement of founded or indicated reports of sexual abuse of very young children. There is the obvious undesirability of bringing a child of pre-school age before a hearing officer to testify in formal fashion, coupled with the advisability of interviewing a child in a home-like or play-like environment where the child is not emotionally constrained. Hence the factfinder is often limited to the testimony of a caseworker who has met with the child at another place and time, in order to learn as much as possible about the child's experience, sometimes by relying on the child's demonstrative actions, as a supplement or replacement for the child's limited ability to communicate by means of the spoken word.

Although in *Lehigh County Office of Children and Youth Services v. Department of Public Welfare,* 101 Pa. Commonwealth Ct. 491, 516 A.2d 1305 (1986) this court astutely recognized the evidence problems in these cases, the panel there struggled to solve the problem by stating that the child's "physical response to questions asked her by the caseworker was not hearsay since it was simply the child's actions and not her words that the caseworker was relating." *Lehigh,* 101 Pa. Commonwealth Ct. at 496, 516 A.2d at 1307 (Judge COLINS dissenting). However, a settled point of evidence law is the rule that out-of-court non-verbal conduct does constitute an extrajudicial declaration if it functions as a communication, and is therefore hearsay, if introduced to prove the truth of the fact asserted. Federal R. Evid. 801(a)(2); L. Packel & A. Poulin Pennsylvania Evidence §801 (1987); E. Cleary, McCormick on Evidence §250 (1984).

Therefore, testimony by a caseworker witness describing the gestures made by a child declarant outside the hearing, for the purpose of proving the truth of the events thought to be described by the non-verbal conduct, is hearsay; we hereby overrule any contrary conclusion expressed in *Lehigh*.

In the present case, the gestures and demonstrative actions of B.L.B., as well as her spoken declarations related by the caseworker witness, were hearsay; this court must confront the issue of admissibility on that basis.

With respect to the admissibility of hearsay in administrative hearings, this court throughout much of its history has declined to treat hearsay as competent to constitute substantial evidence supporting administrative findings except within the narrow limits of the "legal residuum" rule of *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976). *Walker* held that hearsay will be given its natural probative effect and may support a finding (1) if it was received without objection and (2) if it is corroborated by competent evidence otherwise found in the record. That high threshold of admissibility for hearsay in administrative proceedings has served this court well and, we think, has not proved unduly burdensome to administrative agencies.

However, the special and sensitive factors associated with these child abuse record expungement cases call for a fresh examination of the applicability and effect of section 505 of the Administrative Agency Law which states:

> Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.

2 Pa. C. S. §505.

Logical comparison requires an acknowledgment that the *Walker* residuum rule is inconsistent with section 505 of the Administrative Agency Law in that (1) it is a technical rule of evidence and (2) it establishes a higher standard for admissibility than the statutory requirement that the evidence be relevant and "of reasonably probative value."

Legal scholars have been outspoken in their opposition to the residuum rule as laid down elsewhere. Professor Davis, author of *Administrative Law* has stated: "As soon as the residuum rule and the alternative to the rule are understood, the reasons against the rule become overwhelming. . . ." 2 Davis, *Administrative Law,* §14.10 (1958). In *Treatise on Evidence,* Professor McCormick has stated: "The residuum rule is both logically unsound and administratively impractical." McCormick, *Law of Evidence,* §352 (2d Ed. 1972). Indeed, application of the residuum rule to administrative agency proceedings subjects that forum to a stricture greater than the limitation imposed upon a trial court, where a judge may base findings upon hearsay received in the absence of objection, without any requirement of corroboration by separate evidence.

Moreover, in worker compensation cases, following the liberal application of the law which is there statutorily mandated, this court has varied the residuum rule in a different direction; in the workers' compensation field, this court, even where hearsay objections are raised with respect to testimony and records, has given weight to hearsay where it has had corroborative effect with respect to other evidence, for the additional light such evidence may shed on the matter at issue. *Huff v. Workmen's Compensation Appeal Board (Ingalls Steel of Pa.),* 70 Pa. Commonwealth Ct. 646, 453 A.2d 753 (1982); *Landis v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 122, 383 A.2d 146 (1978).

Of interest on the matter of the residuum rule, and its elimination, was the opinion of Justice KAUFFMAN in *Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631 (1981), which proposed rejection of the residuum rule in favor of a Pennsylvania administrative law adaption of Federal Rule of Evidence 803(24), the residual hearsay exception which makes hearsay competent when, pursuant to stated criteria, it possesses "circumstantial guarantees of trustworthiness" determined to be "equivalent" to the logical assurances associated with the hearsay exceptions specifically described in those Rules.

However; no other Justice of the Supreme court joined in that opinion. All of the other six Justices concurred only in the result, with three of the six joining in one concurring opinion and a fourth Justice filing a second concurring opinion; both of the concurring opinions explicitly rejected the liberalizing proposal of Justice KAUFFMAN'S opinion. Moreover, in the following year, the majority opinion in *LeGare v. Unemployment Compensation Board of Review*, 498 Pa. 72, 444 A.2d 1151 (1982), expressly noted that Justice KAUFFMAN'S opinion in *Ceja*, not being joined by any other member of the Court, merely announced the Court's result and therefore is of no precedential value. The Supreme Court's rejection of a lowered bar to the reception of hearsay in unemployment compensation hearings therefore gives us pause.

Moreover, in child abuse expungement cases, the desirability of exempting the young child witness from confrontation is countered by the reality of the communication limitations which are naturally associated with immaturity. As exemplified by *Lehigh*, a child's words are sometimes supplemented by nonverbal acts. The difficulty facing the factfinder in receiving such evidence from an extrajudicial declarant is compounded by

the fact that the hearing officer does not have an opportunity to interpret the child's demonstrative actions directly but is required to accept the caseworker's interpretation of what the child's actions were and also the caseworker's view as to what those actions were meant to convey. Thus, this situation presents more than the classic hearsay problem of receiving statements not subject to cross-examination. It involves the potentially ambiguous communications of an immature person being filtered through an intervening professional's mind and words.

Very pertinent to these concerns is the persuasive analogy provided by the Child Victims and Witnesses Act now in the Judicial Code at 42 Pa. C. S. §5981-5988, added by Act of February 21, 1986, P.L. 41. Directed primarily, although not exclusively, to criminal prosecution proceedings, these sections begin with a policy declaration, announcing an intent to promote the best interests of children, when they are witnesses as well as when they are victims of crime, by according them "different treatment from that of adults. . . ." 42 Pa. C. S. §5981.

In criminal prosecutions, these sections expressly authorize the evidence of a child victim or a child material witness to be presented by videotape deposition, with right of cross-examinastion therein preserved; where the court orders such a deposition, the child witness is exempted from courtroom appearance. 42 Pa. C. S. §5984.

The next section also allows, in criminal prosecutions, a child's testimony to be taken, subject to cross-examination, by closed-circuit television, to avoid the necessity of having the child appear in the courtroom in person. 42 Pa. C. S. §5985. Worthy of note is the point that, as to a 1984 criminal prosecution, the Superior Court held that receiving a child's testimony by closed-

circuit television did not violate the defendant's constitutional right of confrontation which the Pennsylvania Constitution, Art. 1, §9, phrases as entitling the defendant to "meet witnesses face to face." *Commonwealth v. Ludwig,* 366 Pa. Superior Ct. 361, 531 A.2d 459 (1987). Judge WIEAND's opinion, which held that the effective facilitation of confrontation by modern electronic technology warranted avoidance of a literal construction of the constitutional language, was joined by seven members of a nine-member court en banc.

Also, as to criminal prosecutions, these new Judicial Code sections expressly permit the use of "anatomically correct dolls or mannequins" to assist a child in testifying. 42 Pa. C. S. §5987.

Concerning dependency proceedings in Juvenile Court—as to which the Judicial Code expressly recognizes a right of cross-examination, 42 Pa. C. S. §6338(a)—the new provisions include a significant section on the admission of hearsay, as follows:

> *A statement made by a child describing acts* and attempted acts *of indecent contact,* sexual intercourse or deviate sexual intercourse performed with or on the child by another, *not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding* initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, *if a court finds that the time, content, and circumstances of this statement provide sufficient indicia of reliability.* (Emphasis added.)

42 Pa. C. S. §5986, added by Act of February 21, 1986, P. L. 41, §1. Although the Superior Court in a criminal prosecution for corruption of a minor and indecent assault has refused to allow hearsay from a child declarant, *Commonwealth v. Haber,* 351 Pa. Superior

Ct.. 79, 505 A.2d 273 (1986), the application of the above statutory rule to a dependency case presents a distinguishable situation.

Also, the application of the principle of 42 Pa. C. S. §5986 to a civil expungement proceeding would appear to be similarly distinguishable from the concerns attending criminal prosecution. Indeed, in view of the Juvenile Court status of a dependency case prosecuted by the Commonwealth, the admission of hearsay from a child declarant in an expungement proceeding would seem to be a fortiori acceptable, at least if the above-described concern with the intervening interpretations of a caseworker can be met.

An obvious tool to allow a factfinding hearing officer independently to consider the relayed demonstrative actions of a child, without total reliance upon a caseworker's interpretations, is the videotaped deposition, now authorized by the above Judicial Code sections for criminal cases and long accepted by our civil procedural rules for civil cases. With respect to courtroom evidence, Pa. R.C.P. No. 4017.1 expressly authorizes videotaped depositions, and Pa. R.C.P. No. 4020(a)(3)(c) authorizes the evidentiary use of such a deposition in court if the witness is unable to attend or testify because of "age," among other reasons. In addition, Pa. R.C.P. No. 4020(a)(3)(e) provides a broader basis for evidentiary use of a deposition by making it permissible when "such exceptional circumstances exist as to make it desirable, in the interest of justice . . . to allow the deposition to be used."

Of course, the same rule conditions evidentiary use of deposition upon the basis that the party against whom it is to be used must have been present *or represented* at the taking of the deposition. But, in these expungement cases, typically involving the question of sexual abuse of a child by a parent, there are good

reasons to negate the possible intimidating effect of the presence of the parent in question. *See Commonwealth v. Ludwig.* An alternative approach, providing for the presence of counsel at a videotaped interview, also presents some difficulty. Interviews of children in indicated-abuse matters often antedate the inception of the expungement proceeding. Although a camera operator could be screened from a child's view, the presence of counsel cannot be screened from view if counter-questioning is conducted. Moreover, there is reason to agree with the legislative view as to dependency proceedings, indicating that cross-examination of the child should be obviated to avoid psychologically undesirable impact.

Hence, where there are good reasons to exclude the parent and parent's counsel from the extrajudicial interview, such evidence cannot attain the admissibility status which the deposition rules achieve by providing for cross-examination at the taking of a deposition; it must retain its status as hearsay.

We recognize that abandonment of the residuum rule has not been authorized by the Supreme Court in administrative proceedings, including unemployment compensation cases, *Ceja, LeGare.* Adherence to the residuum rule and its variations is particularly understandable in compensation cases where, for example, a flood of exhibits outside the business records exception could present severe factfinding problems.

However, because of the unique problems of proof present in these abuse record expungement cases, and because the legislature found it necessary to establish the proof policy of 42 Pa. C. S. §5986 *subsequent to* issuance of *Ceja* and *LeGare,* the exigencies we face call for applying to child abuse expungement cases a hearsay exception parallel to that now allowed for dependency cases. Adopted from 42 Pa. C. S. §5986, the criterion

for admission by a hearing officer would be a finding that "the time, content, and circumstances" of the evidence "provide sufficient indicia of reliability."

This court is familiar with the workability of the "indicia of reliability" test, having applied it in reviewing parole revocation cases when dealing with the regulation at 37 Pa. Code §71.5(d) which allows an examiner to dispense with confrontation upon a finding of "good cause" for not allowing it. *Powell v. Board of Probation and Parole*, 100 Pa. Commonwealth Ct. 7, 513 A.2d 1139 (1986).

Where a caseworker has recorded or carefully noted a child's lucid words, the hearing officer could find the declaration to be reliable. Moreover, the hearing officer could regard the caseworker witness, as professional person, to be disinterested and therefore reliable, in contrast to the possibly biased testimony of warring parents and others.

Additional confirmation allowing admission of a child's hearsay declarations over objection could be found in corroboration by facts determined through medical examinations, as has occurred in some of these cases. On the other hand, in the situation of a very young or otherwise inarticulate child, there is no reason to require a hearing officer to rely upon the caseworker witness' interpretation of gestures or demonstrations when the electronic means are at hand to assure hereafter that the hearing officer may view those gestures and demonstrations for himself or herself.

Noting that even 2 Pa. C. S. §505, the liberalizing rule of evidence for administrative proceedings, maintains a guarantee of the right of cross-examination at the administrative hearing, we observe that a videotape viewing is likely to facilitate cross-examination of the caseworker by counsel for an opposing party.

This court therefore regards itself to be required by necessity to apply the rule of 42 Pa. C. S. §5986 to this case, and we do so, confining that evidentiary rule solely to these child abuse expungement cases because the perceived necessity presently extends no further.

The hearing officer's adjudication in this case accepted the evidence of abuse conveyed by the caseworker's hearsay testimony; the adjudication expressly states that "medical findings were not indicative."

Our review of the evidence, summarized earlier in this opinion, shows that the child declarant's words alone were sufficient to provide a substantial evidence basis for the key finding that abuse was indicated. Although the witness also relayed demonstrative actions by the child, as well as reference to a drawing, this is not a case where the hearing officer was forced to depend upon the witness' interpretation of the child's actions. Accordingly, under the specific facts of this case, reliability here does not require a videotape record of the interviews.

Nor in this case is there a need to remand for an express finding that the "time, content, and circumstances" of the hearsay declaration "provide sufficient indicia of reliability." This court will require that finding with respect to expungement hearings conducted more than thirty days after the filing date of the order in this case. But here, quite pertinent to those criteria, the adjudication already states:

> The investigator testified as to her educational background and training. She has been employed by CYS since November, 1982 and is apparently qualified for her position. Her investigation followed procedures outlined in the Child Protective Service Law and regulations, Chapter II, Section 23. . . .

The disinterested role of the caseworker is thus noted. The adjudication further states:

> The testimony of the child was recounted by the investigator at the hearing and in the CYS file records under Chronologue of Contacts. . . . This hearing officer cannot believe that a child of 3½ years of age could make up such reported statements based on fantasy or coaching from a third party as contended by the appellant. The Hearing Officer finds the investigation by the CYS revealed sufficient evidence to file a report of indicated child abuse. . . .

This thoughtful analysis by the hearing officer is essentially equivalent to a finding that the time, content and circumstances provide the necessary indicia of reliability.

Accordingly, the decision is affirmed.

### ORDER

NOW, June 13, 1988, the order of the Department of Public Welfare at File No. 21-84-20, dated September 6, 1985, is affirmed.

Judge COLINS concurs in the result only.