543 A.2d 607

Dauphin County Social Services for Children and Youth, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 17, 1987, before Judges MAC-PHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Robert B. Lieberman, Brunt & Lieberman,* for petitioner.

*Ruth O'Brien,* Assistant Counsel, for respondent.

*Bruce E. Cooper,* for intervenor, W. A. Y.

OPINION BY SENIOR JUDGE NARICK, June 24, 1988:

Dauphin County Social Services for Children and Youth (Children and Youth) has petitioned for review of a final decision and order issued by the Department of Public Welfare (DPW). This order adopted in its entirety the recommendation of the hearing officer which granted the request of W. A. Y. to expunge certain indicated reports of child abuse maintained pursuant to the Child Protective Services Law[1] naming W. A. Y. as the perpetrator of the abuse. We affirm.

---

[1] Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §2201-2224.

W. A. Y. was named in indicated reports[2] of sexual child abuse involving his two minor daughters, J. Y. and A. Y.[3] Pursuant to Section 15(d) of the Law, 11 P. S. §2215(d), W. A. Y. submitted a request to the Secretary of DPW for expungement of the indicated reports of child abuse.

A brief chronology of events in this matter can be set forth as follows. On July 5, 1984, Children and Youth received a report of incest naming J. Y. as the abused child and W. A. Y. as the perpetrator. On July 6, 1984 and July 13, 1984, J. Y. met with a sexual abuse specialist from Children and Youth. On July 9, 1984, August 27, 1984, November 1, 1984 and November 17, 1984, J. Y. met with Dr. Dorris Tinker, a clinical psychologist. On July 13, 1984, Children and Youth forwarded a report of suspected child abuse to the Dauphin County District Attorney's Office. On August 2, 1984, Children and Youth filed a child protective service investigation report naming J. Y. as the child and W. A. Y. as the perpetrator.

With respect to A. Y., Children and Youth received a report of sexual abuse naming A. Y. as the child and W. A. Y. as the perpetrator on August 8, 1984. A. Y. was interviewed by Dr. Tinker on August 27, 1984. Children and Youth filed a child protective service investi-

---

[2] "Indicated report" is defined in Section 3 of the Law, 11 P. S. §2203 as

[A] report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, . . . (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare.

[3] The mother of J. Y. and A. Y. is S. Y. J. Y. was born on September 6, 1979 and A. Y. was born on November 10, 1980.

gation report naming A.Y. as the child and W.A.Y. as the perpetrator on September 5, 1984.[4]

On October 8, 1985, a hearing was held before a hearing officer and testimony was presented by Children and Youth and W.A.Y. Neither S.Y., the mother of J.Y. and A.Y., nor J.Y. and A.Y. were present at the hearing before the hearing officer. Testifying on behalf of Children and Youth were Alicia Smith, a sexual abuse specialist employed by Children and Youth, and Dr. Tinker. Smith testified that during her interview with J.Y. she utilized anatomically correct dolls. Smith stated that based upon statements made to her by J.Y. as well as J.Y.'s actions toward the male anatomically correct doll that she believed J.Y. had been sexually abused. Smith did not interview A.Y. Dr. Tinker testified that she believed after interviewing J.Y. that J.Y. had been sexually abused. However, as to A.Y.,[5] Dr. Tinker admitted that she could not be certain whether A.Y. was just repeating what she overheard J.Y. say or whether an instance of abuse had actually occurred.[6]

W.A.Y. testified on his own behalf and also presented the testimony of his father, a neighbor, a friend, and his ex-wife. All of W.A.Y.'s witnesses testified that J.Y. and A.Y. seemed happy and comfortable while spending time with their father. W.A.Y.'s ex-wife also testified that W.A.Y. was not an individual who would engage in sexual molestation of children. W.A.Y.'s ex-wife further testified that while the two of them were married,

---

[4] At the time of the alleged incidences of child abuse, J.Y. was four years old and A.Y. was three years old.

[5] The report of abuse against A.Y. came about apparently when J.Y. told Dr. Tinker that it had happened to A.Y., too.

[6] According to Smith and Dr. Tinker, J.Y. told them that her daddy had "peed in her mouth" and that her daddy "put a magic stick in her pee-pee". Smith testified the magic stick was believed to be a meat baster.

W. A. Y. took care of her daughter for thirty days while she was in the hospital and did not sexually molest her daughter in any way. W. A. Y., testifying on his own behalf, emphatically denied that he had ever abused his children. W. A. Y. testified that his ex-wife, S. Y., had initiated the entire matter as a personal vendetta against him. W. A. Y. further stated that S. Y. had instituted child abuse charges against him in February of 1984 and that these charges had been dismissed as unfounded.

The hearing officer concluded that the majority of the testimony submitted by Children and Youth was hearsay; and therefore, there was a lack of competent testimony supporting Children and Youth's position. For this reason the hearing officer rendered a decision in favor of W. A. Y. and ordered expungement of the indicated reports of child abuse. This appeal by Children and Youth followed.

On a hearing to establish the accuracy of an indicated report of child abuse, Children and Youth, as the local agency herein, has the burden of establishing that the report is accurate. *Children and Youth Services Division v. Department of Public Welfare,* 103 Pa. Commonwealth Ct. 616, 520 A.2d 1246 (1987). Thus, if the agency fails to establish that the report is accurate, the request for expungement will be granted. Our scope of review in an appeal from a DPW order granting expungement of an indicated report of child abuse is limited to a determination of whether DPW's adjudication violates constitutional rights, is in accordance with the law, or whether the findings of fact are supported by substantial evidence. *G.S. v. Department of Public Welfare,* 104 Pa. Commonwealth Ct. 84, 521 A.2d 87 (1987).

The issues raised by Children and Youth herein are as follows: (1) whether the appeal of W. A. Y. as to J. Y. was timely filed; (2) whether it was improper to proceed

with the expungement hearing without the presence of a guardian ad litem to represent the children; and (3) whether the adjudication of DPW was supported by substantial evidence and in accordance with the law.

First, we will address Children and Youth's assertions that W. A. Y.'s appeal with respect to J. Y. was untimely. The basis for Children and Youth's argument is that in 1984 W. A. Y. had requested expungement of the indicated reports of child abuse with respect to J. Y. and when his initial request was denied failed to pursue the matter further.[7] The relevant statutory provision here is Section 15(d) of the Law which provides:

> At any time, a subject of a report may request the secretary to amend, seal or expunge information contained in the Statewide central register on the grounds that it is inaccurate or is being maintained in a manner inconsistent with this act. If the secretary grants the request the Statewide central register, appropriate child protective service agency and all subjects shall be so advised within seven days from the date of this decision. The child protective service agency and any subject have 45 days in which to file an appeal with the secretary. If such an appeal is received, the secretary or his designated agency shall schedule a hearing pursuant to the provisions of Article IV of the act. . . . If no appeal is received within the designated time period, the Statewide central register shall comply with the decision of the secretary and advise the child protective service agency to amend, seal or expunge the information in their records so that

_____

[7] W. A. Y. initiated the request herein for expungement of the records with respect to A. Y. and J. Y. in 1985 after criminal charges which had been inititated by the Dauphin County District Attorney's Office against him had been dismissed.

the records are consistent at both the State and local levels. If the secretary refuses or does not act within a reasonable time, but in no event later than 30 days after receipt of such request, the subject shall have the right to a hearing before the secretary or the designated agent or [sic] the secretary to determine whether the summary in the Statewide central register or the contents of any report filed pursuant to section 6 should be amended, sealed or expunged on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act. The appropriate child protective service shall be given notice of the hearing. *The burden of proof in such hearing shall be on the appropriate child protective service.* The department shall assist the child protective service as necessary. In such hearings, the fact that there was a court finding of child abuse shall be presumptive evidence that the report was substantiated. The secretary or the designated agent of the secretary is hereby authorized and empowered to make any appropriate order respecting the amendment or expungement of such records to make them accurate or consistent with the requirements of this act. (Emphasis added.)

Thus, a request for expungement can be made at any time, and W. A. Y.'s request for expungement cannot be considered untimely. Further, if this were not the intent of DPW, then DPW would have rejected the second request for expungement initiated by W. A. Y., and would not have granted his request for hearing as they did herein.

Children and Youth next complain that it was improper for the hearing officer to proceed with the hearing regarding the expungement of the records without the presence of a guardian ad litem to represent the

children. Section 23(a) of the Law, 11 P.S. §2223(a) provides:

> The court, when a proceeding has been initiated alleging child abuse, shall appoint a guardian ad litem for the child. The guardian ad litem shall be an attorney-at-law. The guardian ad litem shall be given access to all reports relevant to the case and to any reports of examination of the child's parents or other custodian pursuant to this act. The guardian ad litem shall be charged with the representation of the child's best interests at every stage of the proceeding and shall make such further investigation necessary to ascertain the facts, interview witnesses, examine and cross-examine witnesses, make recommendations to the court and participate further in the proceedings to the degree appropriate for adequately representing the child. (Emphasis added.)

The record reveals that Children and Youth made a request for the appointment of a guardian ad litem to represent the interest of the children at the hearing before the hearing officer; but the office of public defender determined that representation was not appropriate because it was an administrative proceeding not a court proceeding. We agree. Section 23(a) specifically refers to the court and its duty when a proceeding has been initiated to appoint a guardian ad litem. We see no other requirements in the Law which would require that a guardian ad litem be appointed to represent children at an administrative proceeding. Also, we must agree with the opinion of the hearing officer which was adopted by DPW that the interests of the children were protected at the administrative hearing because the interests of the children were the same as that of Children and Youth—to have the report of child abuse maintained. Children and Youth was represented by counsel

at the administrative hearing before the hearing officer; therefore, it cannot be concluded that the interest of the children was not served.

The final contention made by Children and Youth is that the decision of the hearing officer which was adopted by DPW was not supported by substantial evidence nor was it in accordance with the law. The record reveals that neither S.Y., the mother of the children, nor J.Y. and A.Y. were present at the hearing before the hearing officer. The only evidence submitted by Children and Youth identifying W.A.Y. as the perpetrator of the abuse was hearsay because both Smith and Dr. Tinker related what one of the children had said to them during interviews. This hearsay testimony was timely objected to by W.A.Y. Thus, with respect to an administrative proceeding, the general rule is that hearsay evidence properly objected to is not competent to support a finding. *Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979).[8]

---

[8] We note that this Court recently in *L.W.B. v. Sosnowski,* 117 Pa. Commonwealth Ct. 120, 543 A.2d 1241 (1988) overruled our earlier holding in *Lehigh County Office of Children and Youth Services v. Department of Public Welfare,* 101 Pa. Commonwealth Ct. 491, 516 A.2d 1305 (1986) which held that a child's physical response to a caseworker's questions was not hearsay because it was the child's actions and not the child's words that the caseworker was relating. Therefore, pursuant to *Sosnowski,* such gestures are hearsay. *Sosnowski* also held that 42 Pa. C.S. §5986 will be applied in child abuse expungement cases. Thus, pursuant to 42 Pa. C.S. §5986, the criterion for admission of hearsay evidence by a hearing officer "would be a finding that 'the time, content, and circumstances' of the evidence 'provide sufficient indicia of reliability'". *Sosnowski,* slip op. at pp. 16-17. However, *Sosnowski* will only be applicable to expungement hearings conducted more than thirty days after the filing date of the *Sosnowski* opinion and order. *Id.* Slip op. at 19. Because this matter occurred well before that time, *Sosnowski* is not applicable.

This Court recognizes and is greatly concerned with the problem which arises in child abuse cases where there is an absence of medical evidence which confirms that abuse occurred and also when the alleged victim does not appear and testify. We are hopeful that our recent holding in *Sosnowski* will alleviate the hearsay problems which arise in child abuse expungement cases.

In the case at bar, it is clear that the only evidence supporting Children and Youth's position that J. Y. and A. Y. were sexually abused by their father consisted of hearsay testimony and the hearing officer did not err in rejecting this testimony.[9]

Accordingly, we must affirm the decision of DPW.

### ORDER

AND NOW, this 24th day of June, 1988, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.

---

[9] However, if *Sosnowski* was applicable to the present matter, a remand would be necessary for a determination as to whether the "time, content, and circumstances" of the hearsay statements "provide sufficient indicia of reliability". *See Sosnowski*, slip op. at 19.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent from the majority opinion.

For too long, I fear, both we and the adjudicative administrative agencies have failed to give full credence to Section 505 of the Administrative Law (Law), 2 Pa. C. S. §505, which provides that administrative agencies shall not be bound by technical rules of evidence at administrative hearings and that all relevant evidence of "reasonably" probative value may be received at such hearings. Our recent opinion in *L.W.B. v. Sosnowski*,

117 Pa. Commonwealth Ct. 120, 543 A.2d 1241 (1988), has taken a giant step forward in this regard. *See also Powell v. Board of Probation and Parole,* 100 Pa. Commonwealth Ct. 7, 513 A.2d 1139 (1986).

In the case now before us, however, the majority once again imposes *severe restrictions upon the admissibility of testimony* which is clearly hearsay without giving due regard to the provisions of Section 505 of the Law. Here there are alleged acts of sexual abuse committed upon children of very tender years (3 and 4) which were timely investigated by professional persons, one a sexual abuse specialist and the other a clinical psychologist. Both of these witnesses testified at the hearing and both testified that based upon their conversations with the children, and, in the case of J.Y., the use of anatomically correct dolls, they believed the children had been sexually abused. Based solely upon the conclusion that the testimony of these witnesses was hearsay and thus incompetent, the hearing officer held that the Children and Youth agency failed to meet its burden of proof.

In *Sosnowski,* where we took an enlightened view of this matter, we said that we would require a finding by the hearing officer of the time, content and circumstances of a hearsay declaration where the reliability of the testimony was an issue, but that our decision would apply only to matters heard 30 days after our opinion in *Sosnowski* was filed. The majority in the opinion *sub judice* would hold, therefore, that *Sosnowski* does not apply here. I disagree.

Here, as in *Sosnowski,* there *is* evidence of record that indicates the reliability of the testimony heard by the hearing officer and there is no need for a finding as to the time, content and circumstances of the hearsay declarations. Certainly the credentials of the witnesses for the Children and Youth agency would make their

testimony reasonably probative under the provisions of Section 505 of the Law.

In addition, I respectfully disagree with the majority's conclusion that error was not committed when the Department of Public Welfare proceeded with the hearing without the appointment of a guardian ad litem for the children as required by Section 23(a) of the Child Protective Services Law, Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §2223(a). The majority agrees with the proposition submitted by the office of public defender to the Department of Public Welfare that Section 23(a) does not apply to administrative proceedings. My reading of Section 23(a) indicates that when *a* proceeding has been initiated alleging child abuse, the court *shall* appoint a guardian ad litem. The present expungement proceeding is *a* proceeding involving child abuse. I think the legislative intent was that children need someone in their individual corners in child abuse cases. There are times when Children and Youth agencies do not or cannot fully protect the child's individual interest.

For the foregoing reasons, I would reverse the Department of Public Welfare adjudication in this matter.