558 A.2d 151

G.W.K., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs February 15, 1989, to Judges PALLADINO and SMITH, and Senior Judge KALISH, sitting as a panel of three.

*G.W.K.*, petitioner, for himself.

*Kathleen Harrington*, Assistant Counsel, for respondent.

OPINION BY JUDGE PALLADINO, May 1, 1989:

G.W.K. (Petitioner) appeals from an order of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) adopting the recommendation of a hearing officer to deny expungement of an indicated report of child abuse. We vacate and remand.

On January 2, 1985, a report of suspected child abuse was received by Children and Youth Services of Allegheny County (CYS) in which Petitioner was named as the perpetrator of sexual abuse against his daughter, K.K. K.K. was approximately three and one-half (3 1/2) years old at the time of the alleged incident of abuse. CYS investigated the report and, on February 21, 1985, determined it to be "indicated" under section 3 of the Child Protective Services Law (Law), Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §2203.[1] Petitioner

---

[1] Section 3 of the Law defines "indicated report" as follows:

[A] report made pursuant to this act if an investigation determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective services investigation or (iii) an admission of acts of abuse by the child's parent or person responsible for the child's welfare.

11 P.S. §2203. Under section 3 of the Law, child abuse includes sexual abuse or sexual exploitation of a child under the age of eighteen. 11 P.S. §2203.

thereafter requested to have the report expunged under section 15(d) of the Law, 11 P.S. §2215(d). DPW denied this request by letter dated January 14, 1986. Petitioner then requested a full hearing before DPW's Office of Hearings and Appeals.

After a hearing, a hearing officer recommended that expungement be denied, concluding that there was substantial evidence that Petitioner was the perpetrator of sexual abuse against K.K. By order dated June 23, 1988, DPW adopted the recommendation of the hearing officer and denied expungement.

On appeal *pro se* to this court,[2] Petitioner raises numerous allegations of error which we conclude consist of the following: (1) CYS failed to conduct an adequate investigation into the allegations of abuse; (2) the expert testimony of a clinical psychologist was based upon information supplied by K.K.'s mother who was biased against Petitioner; (3) the hearing officer improperly admitted hearsay evidence to which Petitioner objected; and (4) the report was not supported by substantial evidence. We will address these issues seriatim.

Petitioner first contends that CYS failed to conduct a complete investigation because CYS interviewed K.K. only once and never interviewed him at all. Petitioner also asserts that CYS improperly filed its report prior to K.K.'s psychological evaluations.

Under section 17 of the Law, the child protective service is required to commence an investigation within twenty-four (24) hours of its receipt of the report in order to determine the risk to the child if permitted to remain

---

[2] Our scope of review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or whether DPW's findings of fact are supported by substantial evidence. *Luzerne County Children and Youth Services v. Department of Public Welfare*, 121 Pa. Commonwealth Ct. 198, 550 A.2d 604 (1988).

in the existing home environment as well as the nature, extent, and cause of any condition specified in the report. 11 P.S. §2217(4).[3] Further, the child protective service is required to determine within thirty (30) days whether the report is founded, indicated, or unfounded. 11 P.S. §2217(6).

At the hearing, Petitioner testified that he was not contacted by CYS. N.T. at 56. However, Petitioner also admitted that his attorney told him not to talk to anyone about the alleged abuse. N.T. at 56-57. Tammi Hilko, a CYS caseworker, testified that the indicated report was based upon interviews with D.K. and K.K. as well as two letters from K.K.'s pediatrician dated January 9, 1984 [sic] and January 17, 1985, respectively, which letters set forth the child's description of the alleged abuse and the results of a physical examination of the child. N.T. at 6-7, 10. Ms. Hilko acknowledged that the evaluation of K.K. conducted by Dr. Anthony Mannarino, a clinical psychologist, occurred subsequent to the filing of the indicated report. N.T. at 9. Finally, Ms. Hilko testified that she attempted to contact Petitioner by mail but that the mail was returned to her. N.T. at 8.

Review of the foregoing testimony by the CYS caseworker discloses that CYS did conduct an investigation prior to filing the indicated report. However, the extent to which CYS investigated the alleged abuse and the results of that investigation are matters of evidentiary

---

[3] We note that pursuant to the Law, DPW has promulgated regulations, effective January 1, 1986, which provide that the child protective service shall, if possible, interview those persons who are known to have or may be reasonably expected to have information pertaining to the incident(s) of alleged abuse, including, but not limited to: the child, the child's parents, the alleged perpetrator, the reporter of the suspected abuse, and eyewitnesses. 55 Pa. Code §3490.55(d). When appropriate during its investigation, the child protective service shall obtain medical evidence, expert consultation, or both. 55 Pa. Code §3490.55(g).

weight within the province of the fact-finder. *Gomez v. Department of Public Welfare*, 111 Pa. Commonwealth Ct. 234, 533 A.2d 826 (1987). The deficiencies, if any, in CYS' investigation and report do not preclude the hearing officer from considering the investigation and report in the first instance.

Petitioner next contends that Dr. Mannarino, who testified on behalf of CYS, received background information from K.K.'s mother, D.K., who was biased against Petitioner. Thus, Petitioner asserts that the testimony of Dr. Mannarino must also be deemed biased and lacking in credibility. However, this court has frequently held that questions of credibility and evidentiary weight are within the province of the fact-finder. *Gomez*.

Petitioner next contends that the hearing officer improperly admitted hearsay evidence.[4] Petitioner further asserts that CYS did not meet its burden of proving that the indicated report was accurate. Because both of these contentions are directed to the issue of whether DPW's findings of fact are supported by substantial evidence, we will address them together.

Initially, we note that on an appeal from a refusal to expunge a report of child abuse, the child protective service bears the burden of establishing that the report is accurate. *Luzerne County Children and Youth Services v. Department of Public Welfare*, 121 Pa. Commonwealth Ct. 198, 550 A.2d 604 (1988). In this case, CYS presented the testimony of Ms. Hilko, who testified that

---

[4] At the hearing, CYS offered for admission into evidence the two letters written by K.K.'s pediatrician, Dr. Shatten. Counsel for Petitioner objected to the January 9th letter on the grounds that the letter constituted inadmissible hearsay. After discussion between counsel for Petitioner and counsel for CYS, CYS agreed to strike the last sentence in the letter. Upon questioning by the hearing officer, counsel for Petitioner stated that he no longer had any objection to the admission of the letter into evidence. N.T. at 10-12. Petitioner made no other hearsay objections during the course of the hearing.

K.K. told her "that her father had touched her 'pee-pee' and her 'bum' with his 'bum.' " N.T. at 7. CYS also presented the testimony of Dr. Mannarino, who testified that K.K. told him "that her dad had touched her both with his hand and with his tongue" and that K.K. denied that any one else had abused her. N.T. at 26. Dr. Mannarino further stated that K.K. told him that the abuse had occurred more than once, although she was unable to specify the number of episodes. N.T. at 26-27. Dr. Mannarino also testified that K.K. was able to differentiate between fantasy and reality and indicated to him that the alleged abuse was real. N.T. at 41-42. Finally, Dr. Mannarino testified that upon the conclusion of his verbal discussion with the child, K.K. then demonstrated the acts of alleged abuse with anatomically correct dolls. N.T. at 28.

CYS also introduced into evidence a written psychological evaluation of K.K. prepared by Dr. Neil D. Rosenblum, a clinical psychologist. Exhibit C-6. Dr. Rosenblum stated in his report that K.K. described to him the alleged abuse and demonstrated the same with a doll. Finally, CYS introduced into evidence two letters from Dr. Shatten, K.K.'s pediatrician. Exhibits C-3, C-4. Dr. Shatten's letter of January 9th states that K.K. informed him that she was tied to a chair by her father and that, on a separate occasion, her father touched her "[w]here I pee." Exhibit C-3. The letters further provided that a physical exam disclosed no evidence of trauma or bruising. Exhibits C-3, C-4.

The hearing officer in this case recognized that hearsay evidence, admitted without objection, can support a finding if corroborated by competent evidence in the record. *Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979). Relying upon *Lehigh County Office of Children and Youth Services v. Department of Public Welfare,* 101 Pa. Commonwealth

Ct. 491, 516 A.2d 1305 (1986), *petition for allowance of appeal denied,* 515 Pa. 625, 531 A.2d 432 (1987), in which this court held that a child's physical responses to a caseworker's questions did not constitute hearsay, the hearing officer found the requisite corroboration in this case in the testimony regarding K.K.'s physical gestures while handling the anatomically correct dolls.

This court overruled the above holding of *Lehigh County in L.W.B. v. Sosnowski,* 117 Pa. Commonwealth Ct. 120, 543 A.2d 1241 (1988). Thus, under our holding in *Sosnowski,* the testimony concerning K.K.'s physical gestures does constitute hearsay because it was offered to prove the truth of the matter asserted, namely, the acts of alleged sexual abuse. However, in recognition of the special problems of proof in child abuse cases, we also held in *Sosnowski* that out-of-court statements made by a child describing acts or attempted acts of abuse are admissible in expungement proceedings if the hearing officer finds that the time, content, and circumstances of the statements provide sufficient indicia of reliability.

In *Sosnowski,* we determined that a remand for findings as to the reliability of the child's out-of-court statements was unwarranted because the hearing officer's analysis was "essentially equivalent to a finding that the time, content and circumstances provide the necessary indicia of reliability." *Id.* at 136, 543 A.2d at 1248. The hearing officer in *Sosnowski* specifically noted the caseworker's educational background and training, the duration of her employment with the child protective service, and that her investigation followed the procedures delineated in the Law. Further, the hearing officer found that the statements made by the subject child were not likely to be the result of fantasy or coaching by a third party. *Id.*

The hearing officer's adjudication in this case is based entirely upon the testimony of several witnesses relating

K.K.'s spoken declarations as well as her physical gestures when handling the dolls. The hearing officer's determination rests solely upon his conclusion that the testimony regarding K.K.'s physical responses was *not* hearsay and therefore was corroborative of the testimony regarding K.K.'s out-of-court spoken declarations. In contrast to *Sosnowski,* the hearing officer made no findings as to the role of the caseworker in conducting the CYS investigation or in testifying at the hearing. Further, the hearing officer issued no findings on the likelihood that the subject child made up the allegations or was coached to do so. Therefore, we are compelled to remand for specific findings as to whether the time, content and circumstances of the hearsay statements provide the necessary indicia of reliability.[5] *DJP v Department of Public Welfare,* 118 Pa. Commonwealth Ct. 569, 545 A.2d 496 (1988).

Accordingly, we vacate and remand.

---

[5] The en banc court in *Sosnowski* stated that it will require specific findings with respect to expungement hearings conducted more than thirty (30) days after the filing date of the order in that case. In *Children and Youth Services Division, Department of Human Services, County of Northampton v. Department of Public Welfare,* 117 Pa. Commonwealth Ct. 601, 544 A.2d 101 (1988) and *Dauphin County Social Services for Children and Youth v. Department of Public Welfare,* 117 Pa. Commonwealth Ct. 305, 543 A.2d 607 (1988), this court determined that the evidentiary rule created by *Sosnowski* was inapplicable to hearings held prior to July 13, 1988 (30 days after the filing date of *Sosnowski*). Accordingly, the court in *Children and Youth* and *Dauphin County* concluded that those cases were to be analyzed in light of *Burks v. Department of Public Welfare,* 48 Pa. Commonwealth Ct. 6, 408 A.2d 912 (1979). However, we do not read the thirty (30) day language in *Sosnowski* to preclude a remand in this matter. *See D.J.P. v. Department of Public Welfare,* 118 Pa. Commonwealth Ct. 569, 545 A.2d 496 (1988).

## ORDER

AND NOW, May 1, 1989 the order of the Department of Public Welfare in the above-captioned case is vacated and remanded for proceedings consistent with the foregoing opinion. The hearing officer is directed to make findings as to the indicia of reliability of the hearsay testimony and to issue a new determination.

Jurisdiction relinquished.