595 A.2d 644

**M.R.F., Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided July 10, 1991.

Matthew Hanna, Media, for petitioner.

Myra Werrin Sacks, Harrisburg, for respondent.

Before CRAIG, President Judge, and BYER, J., and CRUMLISH, Jr., Senior Judge.

BYER, Judge.

M.R.F. appeals an adjudication of the Department of Public Welfare (DPW) adopting the recommendation of the hearing officer and denying his request to expunge an

indicated report of child sexual abuse under the Child Protective Services Law.[1] We affirm.

M.R.F. and L.F. are the natural parents of daughter M. (child), born March 11, 1983. On October 10, 1986, L.F. reported to the County Children and Youth Services (CYS) that she suspected her then estranged husband, M.R.F., of sexually abusing the child, who was then three and one half years old. The report was investigated by Rena Counsellor, a case worker for CYS. Relying on information obtained through this investigation and the child's medical records, CYS filed an indicated report of child abuse, alleging that the child had been sexually abused and identifying M.R.F. as the perpetrator.

M.R.F. sought to have the report expunged under section 15(d) of the act.[2] At the hearing, Ms. Counsellor and the child's maternal grandmother testified for DPW, and M.R.F. and the child's paternal grandfather testified for M.R.F. Based upon the testimony and exhibits introduced at the hearing, the hearing officer concluded that CYS had satisfied its burden of proof by providing relevant evidence

1. Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§ 2201–2224. Section 3 of the act, 11 P.S. § 2203, defines "indicated report" as "a report made pursuant to this Act if an investigation by the Child Protective Service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare." A virtually identical definition appears at 55 Pa.Code § 3490.4.

2. Section 15(d), 11 P.S. § 2215(d), provides:
 (d) At any time, a subject of a report may request the secretary to amend, seal or expunge information contained in the Statewide central register on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act.... If the secretary refuses ... the subject shall have the right to a hearing before the secretary or the designated agent or the secretary to determine whether the summary in the Statewide central register or the contents of any report filed pursuant to section 6 should be amended, sealed or expunged on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act. The appropriate child protective service shall be given notice of the hearing. The burden of proof in such hearing shall be on the appropriate child protective service.

that M.R.F. had sexually abused the child. Therefore, the hearing officer recommended denying M.R.F.'s request and retaining the indicated report in the central register. The director of DPW's Office of Hearings and Appeals, after a review of the record as a whole, adopted the hearing officer's recommendation in its entirety and issued the order denying expungement. M.R.F. now appeals.

 Our standard of review requires that we determine whether DPW's adjudication is in accordance with the law, whether its findings of fact are supported by substantial evidence, and whether the appellant's constitutional rights were violated. 2 Pa.C.S. § 704; *L.W.B. v. Sosnowski*, 117 Pa.Commonwealth Ct. 120, 543 A.2d 1241 (1988). Evidence is substantial where it so preponderates in favor of a conclusion that it outweighs in the mind of the factfinder any inconsistent evidence and reasonable inferences drawn therefrom. *G.S. v. Department of Public Welfare*, 104 Pa.Commonwealth Ct. 84, 521 A.2d 87 (1987). On an appeal from a refusal to expunge a report of child abuse, the child protective agency bears the burden of establishing the report as accurate by substantial evidence. Child Protective Services Law, § 15(d), 11 P.S. § 2215(d); 55 Pa.Code § 3490.106(f)(2); *G.S.*

 M.R.F. argues on appeal that DPW failed to provide sufficient evidence of the existence of abuse, either through competent medical evidence or through admissible testimony. M.R.F. also argues that even if there were substantial evidence that the child was sexually abused, this evidence was insufficient to establish that he was the perpetrator.

### Fact of Abuse

M.R.F.'s argument that DPW failed to provide sufficient evidence that the child was the victim of a sexual molestation is without merit. M.R.F.'s own statements on the matter are contradictory. Despite his suggestions that no abuse occurred, on other occasions M.R.F. accepted the abuse as fact. This was noted in his psychological evalua-

tion when the evaluator noted "contradictory reporting i.e.: 'I want to protect her from whomever is bothering her vs. I don't think anyone is bothering her.'" (Exhibit C–5, 3). Regardless of M.R.F.'s conflicting testimony, there is ample evidence to support the existence of abuse.

Ms. Counsellor interviewed the child on three separate occasions using established methods specifically recognized throughout the field of social work for use in the investigation of child sexual abuse.[3] At each interview, the child indicated clearly and consistently that she had been sexually abused. Using dolls, she described and demonstrated specific incidents of abuse and displayed an alarmingly inappropriate knowledge of sexual matters.[4]

Because Ms. Counsellor was aware of the custody dispute between M.R.F. and L.F., she considered the possibility that the child had been encouraged to fabricate the incidents. However, she became convinced that the evidence proved otherwise. The child was perfectly consistent, and the information she provided was accompanied by physical and behavioral indicators. In her report following the investigation, Ms. Counsellor summarized the results, stating, "Child describes ongoing pattern of abuse during weekend visitations, including oral sex, genital-to-genital contact and fondling, ejaculation. Child is clear and consistent." (N.T., 22). This report also indicated that M.R.F. was the perpetrator of these acts.

Ms. Counsellor was not the only person who was convinced that the child had suffered sexual abuse. In the psychological evaluations included as part of the record without objection, the evaluator, Robert A. Nass, Sr., M.A., President and Director of The Family Enrichment Center, Inc., invariably drew the same conclusion. In his evaluation

3. In its brief, DPW noted that Ms. Counsellor conducted her interviews according to Suzanne Sgroi's protocol, in which the case worker first develops a relationship with the child through drawing, coloring, and talking, and then makes use of anatomically correct dolls and other methods in order to elicit information. S. Sgroi, *Handbook of Clinical Intervention In Child Sexual Abuse* (1982).

4. See *infra* note 6.

of L.F., he stated, "the description of the child's behavior and verbalization does indicate that her daughter has been molested." (Exhibit C–3, 3). In the evaluation of M.R.F., he concluded, "there is conclusive evidence that his daughter has been molested by someone." (Exhibit C–5, 3).

In an effort to rebut DPW's evidence, M.R.F. advances two alternative theories. He suggests that the child was either fantasizing, or acting out what she had observed happening between her mother and her mother's boyfriend. Ms. Counsellor considered both possibilities and dismissed them. During an interview, the child referred to her fantasy, an evil queen who would "get her". When Ms. Counsellor asked her why, she answered, "Cause I was in bed." When asked who told her this, she said, "Daddy." (N.T., 16, 20). Moreover, when questioned whether incidents could merely have been reports of the child's observation, Ms. Counsellor responded that the spontaneous nature of the child's statements and actions indicated that everything had happened to her personally. (N.T., 40).

M.R.F. introduced no evidence in support of his theories, beyond his own speculation. We hold that DPW and the hearing officer acted within their province in rejecting these theories, and that the finding of child abuse is supported by substantial evidence.

### M.R.F. as Perpetrator

Next, M.R.F. asserts that even if the child was abused, the evidence was not sufficient to identify him as the perpetrator. The evidence shows that there were four males who had unsupervised access to the child and, therefore, were considered as possible suspects during the investigation. These were M.R.F.'s nephew, the paternal grandfather, L.F.'s boyfriend, and M.R.F.

M.R.F. and his nephew both lived with M.R.F.'s parents. CYS contended that episodes of abuse occurred during the child's weekend visitations at this residence.

Although M.R.F.'s nephew lived in the house and, therefore, had access to the child, there was no evidence that he would have abused the child or even that he was ever alone with her.

M.R.F.'s father was implicated mainly because M.R.F. told the psychological evaluator that the child slept between the paternal grandparents in their bed during these weekend visits. However, Ms. Counsellor testified that when she interviewed M.R.F., he said that the child slept in his room on his bed, while he slept on the floor. (N.T., 14, 46–47). This latter version was confirmed in Ms. Counsellor's interview with M.R.F.'s mother. (N.T., 44).

L.F.'s boyfriend was considered a possible perpetrator because he was a frequent visitor in L.F.'s home.[5] However, both he and L.F., in separate interviews, asserted that he had only been alone with the child for three very brief periods over an eight month time span. (N.T., 15, 24; Exhibit C–3, 3).

Furthermore, there is evidence that the child's abuse antedated L.F.'s relationship with her boyfriend, which began approximately eight months prior to the report, when the child was about three years old. The medical records referred to a continued pattern of vaginal infections and abrasions from an early age. (Exhibit C–1). Moreover, there were statements from both M.R.F. and L.F. regarding

5. In fact, L.F. told Ms. Counsellor that the child sometimes called her boyfriend "Daddy." With this in mind, Ms. Counsellor questioned the child to establish which "Daddy" the child was speaking about during their interviews. From her responses, Ms. Counsellor excluded the boyfriend's possible involvement. Ms. Counsellor testified:

> When she started demonstrating the same sexual interactions between the dolls and continued to call the partner "Daddy," I said several times, you know, "Do you mean Daddy M. or Daddy T.," and she would always say, "Daddy M."
> She also consistently described it happening in her paternal grandmother's house.
> Later, she talked about Daddy pinching her hiney.... I asked if T. touched her there or kissed her there, and she said, "No." I said, "Only Daddy," and she said, "Yes." (N.T., 11, 12).

their child's unusual behavior.[6] Finally, the child unfailingly named M.R.F. as the abuser. Relying upon all the relevant information, Ms. Counsellor concluded that M.R.F. was in fact the perpetrator.[7] We hold that there was substantial evidence to support her conclusion and that the agency did not err in adopting it.

## Hearsay

■ Finally, M.R.F. argues that the adjudication was contrary to law because the hearing officer relied upon hearsay. In *L.W.B. v. Sosnowski*, 117 Pa.Commonwealth Ct. 120, 543 A.2d 1241 (1988), we held that testimony by a caseworker witness describing the statements and gestures made by a child declarant for the purposes of proving the truth of the events thought to be described was hearsay. However, because of unique problems of proof in child sexual abuse record expungement cases, we recognized a hearsay exception, parallel to that applicable to juvenile dependency cases under 42 Pa.C.S. § 5986, for statements by a child describing certain sexually abusive conduct, provided that the time, content, and circumstances give sufficient indicia of reliability. *Id.*, 117 Pa.Commonwealth Ct. at 133–134, 543 A.2d at 1247. As an example of the indicia of reliability test, we stated:

6. For example, when the child was about 20 months old, she began to say "dicky," "fucky," and "pricky" while playing with her dolls. She would put her bottle between the dolls legs and hold it against her pelvic area. At the time, L.F. reported this to CYS, but CYS was forced to drop the case because the child was pre-verbal and could not confirm the abuse. (N.T., 17, 19, 24–25, 32, 35–36).

7. In a psycho-sexual evaluation requested by M.R.F.'s lawyer, the evaluator, like Ms. Counsellor, considered all four potential perpetrators. In his report, the evaluator concluded that M.R.F. was the one most likely to have committed the act. The report stated that M.R.F. "displays the characteristics of an offender and [the child] has indicated in her interviews that he has had sexual activity with her." (Exhibit C–4, 2). The existence of sexual abuse and the implication of M.R.F. as abuser also was corroborated by the incriminating testimony of the child's maternal grandmother. However, we see no need to go into this testimony because she is not likely to be a disinterested party. Moreover, the hearing officer did not refer to it in his discussion, and we do not need this testimony to reach our determination.

Where a caseworker has recorded or carefully noted a child's lucid words, the hearing officer could find the declaration to be reliable. Moreover, the hearing officer could regard the caseworker witness, as professional person, to be disinterested and therefore reliable, in contrast to the possibly bias testimony of warring parents and others.

Additional confirmation allowing admission of a child's hearsay declarations over objection could be found in corroboration by facts determined through medical examinations.

*Id.*, 117 Pa.Commonwealth Ct. at 134, 543 A.2d at 1247.

Although in *L.W.B.* we did not remand for an express finding that this reliability test was met, we stated that we "will require that finding with respect to expungement hearings conducted more than 30 days after the filing date of the order in this case." *Id.*, 117 Pa.Commonwealth Ct. at 135, 543 A.2d at 1248. We also indicated in *L.W.B.* that "the thoughtful analysis" of the hearing officer in that case was equivalent to a finding that the time, content, and circumstances provide the necessary indicia of reliability. *Id.*, 117 Pa.Commonwealth Ct. at 136, 543 A.2d at 1248.

Despite any implication to the contrary in *L.W.B.*, we relied upon such a "thoughtful analysis" and *not* an express finding of reliability in *B.G. v. Department of Public Welfare*, 132 Pa.Commonwealth Ct. 563, 573 A.2d 672 (1990), when we concluded that a hearing officer properly admitted and relied upon the testimony of a caseworker in an expungement case. The record in this case justifies our doing likewise.

Ms. Counsellor is a social worker, skilled in the area of sexual abuse investigation and therapy. She conducted a thoughtful and comprehensive investigation, using well-recognized methods. She relied upon the child's medical history, psychological evaluations of the family members, and interviews with relevant parties. Moreover, the investigation took place at a time close to the occurrence of the

episodes of abuse.[8] Therefore, we conclude that the evidence satisfies the three criteria of reliability—time, content, and circumstances—and was admissible under the hearsay exception recognized in *L.W.B.*

\* \* \*

The hearing officer, as factfinder, determines the weight and credibility of the witnesses. *Philadelphia County Department of Human Services, Division of Children and Youth v. Department of Public Welfare,* 135 Pa.Commonwealth Ct. 542, 581 A.2d 704 (1990); *Children and Youth Services v. Department of Public Welfare,* 103 Pa.Commonwealth Ct. 616, 520 A.2d 1246 (1987). Accepting Ms. Counsellor's testimony as credible, which the hearing officer obviously did,[9] substantial evidence exists to support the conclusion that M.R.F. sexually abused his daughter and is not entitled to expungement of an indicated report of child abuse. We affirm.

## ORDER

We affirm the adjudication of the Department of Public Welfare.

The decision in this case was reached prior to the retirement of CRUMLISH, Senior Judge.

---

8. In contrast, in *Philadelphia County Department of Human Services, Division of Children and Youth v. Department of Public Welfare,* 135 Pa.Commonwealth Ct. 542, 581 A.2d 704 (1990), there was a substantial time lapse between the date of the alleged incident and the time of the child's statements, which were not otherwise corroborated.

9. The hearing officer stated in his report:
 The hearing officer rejects the appellant's argument that the agency has failed to meets it burden of proof contending that specific acts of abuse have not actually been made clear and if there were such acts, questions whether they were committed by the appellant or others. *The testimony of the investigating social worker was quite clear.* (Emphasis added).