520 A.2d 1246

Children & Youth Services Division, Department of Human Services, County of Northampton, Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 20, 1986, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Jack A. Panella,* Assistant County Solicitor, for petitioner.

*Sandor Engel,* for intervening respondent, R. S.

No appearance for respondent.

OPINION BY JUDGE COLINS, February 11, 1987:

This is an appeal from a decision by the Department of Public Welfare, Regional Office (DPW), expunging three (3) "indicated reports"[1] of child abuse which had

---

[1] An indicated report is defined as "a report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare." Section 3 of the Law, 11 P.S. §2203.

been issued by the Children & Youth Services Division, Department of Human Services, County of Northampton, Pennsylvania (Human Services), pursuant to the Child Protective Services Law (Law), Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§2201-2224.

R.S. and L.S. are the parents of two minor daughters, N.S. and J.S., born 5/30/79 and 2/7/81, respectively. On the weekend of August 23 through August 25, 1982, R.S., the father who was separated from his wife, had overnight visitation with the children. Following an overnight visit, the mother, L.S., and the maternal grandmother, M.C., became suspicious that R.S. might have sexually abused the children.[2] A discussion took place between the parents and their pastor who advised them that a physician should be contacted. On August 30, 1982, Charles F. Kelly, Jr., M.D., a pediatric physician, examined both N.S. and J.S. and found no evidence of sexual abuse. Nevertheless, he contacted Human Services and reported a possible case of sexual child abuse as was his duty. David Hankard, an investigative caseworker, was assigned to investigate the report. Subsequently, the children were interviewed by caseworker Rose Bauman, and upon conclusion of this investigation, an indicated report was issued with respect to N.S.

Later, although R.S. was permitted only supervised visitation with his children, M.C. became suspicious that R.S. was sexually abusing the children during these

---

[2] Sexual abuse is defined by the Law as "the obscene or pornographic photographing, filming or depiction of children for commercial purposes, or the rape, molestation, incest, prostitution, or other such forms of sexual exploitation of children under circumstances which indicate that the child's health or welfare is harmed or threatened thereby, as determined in accordance with regulations prescribed by the secretary." 11 P.S. §2203.

visits. Consequently, the grandmother again contacted Human Services. David Hankard investigated the matter and after interviews with the two children by caseworker Rose Bauman, Human Services issued two more indicated reports regarding sexual abuse by R.S. of his daughters N.S. and J.S.

R.S. requested the Secretary of DPW, in accordance with Section 15(d) of the Law, 11 P.S. §2215(d), to expunge the indicated reports held in the central statewide register on the ground that they were inaccurate. Accordingly, a hearing was held before a designated Hearing Officer on December 22, 1983, which was later reconvened on March 22, 1984. The Hearing Officer, after hearing testimony and receiving exhibits into evidence, issued an adjudication and recommendation dated October 23, 1984, requiring that the indicated reports be expunged. Patricia H. O'Neal, director of the Office of Hearings and Appeals of the DPW, adopted the Hearing Officer's recommendation in its entirety. This order sustaining R.S.' appeal constituted the final administrative action taken by the DPW. This appeal followed.

The issue before this Court is whether the Hearing Officer's adjudication as adopted by the Office of Hearings and Appeals was made in accordance with the law and without violation of petitioner's constitutional rights and whether its findings of fact were supported by substantial evidence. *See Montgomery County Child Welfare Services v. Hull,* 51 Pa. Commonwealth Ct. 1, 413 A.2d 757 (1980); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Section 15(d) of the Law establishes that when a hearing is held to correct an alleged inaccuracy of an indicated report, Human Services has the burden of proving that there is substantial evidence to support such a report.

> At any time, a subject of a report may request the secretary to amend, seal or expunge information contained in the Statewide central register on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act. . . . [T]he subject shall have the right to a hearing before the secretary or the designated agent or [sic] the secretary to determine whether the summary in this Statewide central register or the contents of any report filed pursuant to section 6 should be amended, sealed or expunged. . . . *The burden of proof in such hearing shall be on the appropriate child protective service.*

11 P.S. §2215(d) (Emphasis added).

The Hearing Officer in the instant case noted that the indicated reports were not supported by any available medical evidence, nor by an admission of abuse on the child's part, nor by the person responsible for the child's welfare. Therefore, he concluded that evidence in support of the indicated reports must be supplied from Human Services' investigation. However, the Hearing Officer, after examining all of the evidence, concluded that there was not substantial evidence of sexual child abuse. In reaching this conclusion, the Hearing Officer noted that evidence of such abuse was supplied primarily by M.C., the maternal grandmother, and L.S., the mother of the children. Secondary evidence was supplied by the transcripts of interviews made by the investigators with the children. The third source of evidence of sexual child abuse came from the Human Services' psychologist, whose analyses were taken into consideration in making the indicated reports.

The Hearing Officer found all three sources of evidence insufficient to substantiate the accuracy of the indicated reports. He questioned the credibility of the

testimony given by M.C. and L.S. and stated that it had to be discounted in large part. He also found that the indicated reports were based upon interviews containing leading questions and reports which relied upon unsubstantiated hearsay.

With regard to M.C., the Hearing Officer noted that her testimony (which supplied the greatest bulk of potentially-implicating testimony) was for the most part not corroborated by any other witness. Additionally, he noted that M.C. could not be considered disinterested and was clearly biased because: (1) she exhibited an intent to help her daughter who was separated from R.S. (and who was involved at that time in disputes over custody and child visitation); (2) she and her husband had paid for an addition to be built on R.S.' house and then R.S. had successfully evicted them from the apartment following his separation from L.S.; and (3) her demeanor at the hearing indicated that there was no love lost between her and R.S.

With regard to L.S., the Hearing Officer noted that she exhibited a negative attitude towards R.S. in front of her children and that despite her stories of child abuse, these stories were rendered incredible due to the fact that she, as a witness to them, nonetheless, made no objection when they allegedly occurred. Furthermore, the Hearing Officer found it telling that L.S. believed that sexual abuse had taken place during supervised visitation at which she had been present (although there was no evidence of such). However, others supervising such visitations, who were related to L.S. by both blood and marriage, testified that they had observed R.S. and the children, both before and after the alleged abuse, and felt no alarm for the safety of the children, and did not note anything unusual in the relationship between R.S. and the children.

In reviewing the records of Human Services, the Hearing Officer found that the interviews with the children did not lead to a conclusion that abuse had occurred. He noted that the questions in the interviews appeared to be quite leading in nature and where it was elicited that R.S. had touched the children in the vaginal or rectum areas, no effort was made to discern whether these actions occurred while R.S. was changing the children's diapers, or was engaged in some similarly innocent activity.

Finally, the Hearing Officer found that the psychologist, Dr. Trawin, had accepted as true a great deal of the testimony of M.C. with little or no attempt to determine the effects of M.C.'s rather obvious bias. Furthermore, with respect to the videotapes that Dr. Trawin observed, the Hearing Officer noted that these tapes contained leading questions. On this point, the Hearing Officer noted that Dr. Trawin conceded, "[a]lthough [N.S.] was visibly uncomfortable in talking about her father or about the alleged incidents of abuse, there was [sic] numerous instances in the interview where the line of questioning was leading and directed toward confirmation of a presupposed guilt on the part of Mr. S. [R.S.]." Record at 12-a.

Thus, in reviewing the evidence, the Hearing Officer, as the trier of fact, concluded that there was not substantial evidence to support a conclusion of sexual abuse. In addition to concluding that there was a lack of substantial evidence, the Hearing Officer also noted that a psychological profile of R.S. taken by George M. Perovich, a licensed psychologist, indicated that R.S. was not maladjusted and, in fact, that he was incapable of sexually abusing his children.

Evidence is substantial where it so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable

inferences drawn therefrom. *Resnick v. Unemployment Compensation Board of Review*, 58 Pa. Commonwealth Ct. 504, 427 A.2d 1289 (1981). In the instant case, the Hearing Officer weighed the evidence and found that it did not preponderate in favor of a finding of sexual abuse. He evidently believed that the children were manipulated into making suggestive statements and that the claims of sexual abuse were fabricated.

This Court recognizes that the determinations as to the weight and credibility of evidence are matters solely within the province of the factfinding agency. *Kundrat v. State Dental Council and Examining Board*, 67 Pa. Commonwealth Ct. 341, 447 A.2d 355 (1982). It is beyond this Court's scope of review to reweigh the evidence. *Id*. We find that the Hearing Officer's recommendation as adopted by the Office of Hearings and Appeals contains no error at law and is supported by substantial evidence.

Accordingly, the order of the Office of Hearings and Appeals in the above matter is hereby affirmed.

### ORDER

AND NOW, this 11th day of February, 1987, the order of the Department of Public Welfare, dated October 25, 1984, in the above-captioned matter, is hereby affirmed.