554 A.2d 994

K. & L. N., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 3, 1988, before Judges COLINS and MCGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Thomas C. Panian,* for petitioners.

*Jason W. Manne,* Assistant Counsel, with him, *Myra Werrin Sacks,* Assistant Counsel, for respondent.

OPINION BY JUDGE COLINS, March 1, 1989:

K.N. and L.N. (petitioners)[1] appeal from an order of the Department of Public Welfare (DPW) which denied petitioners' request to expunge an indicated report of child abuse filed by the Western Regional Office of Children, Youth and Families (CYS) pursuant to the Child Protective Services Law (Law).[2]

Children's Hospital of Pittsburgh (Children's) submitted a report of suspected child abuse to CYS on September 19, 1984. A DPW field representative, Mildred Shagum (Shagum) conducted an investigation[3] and

---

[1] For purposes of clarity, K.N. is T.N.'s adoptive father and L.N. is her adoptive mother. We shall refer to them both individually by using their respective initials, and collectively, by using the term "petitioners."

[2] Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§2201-2224.

[3] Petitioners, as adoptive and foster parents, were agents of Fayette County Children and Youth Services (FYS). Therefore, Shagum assumed the role of FYS and conducted the investigation. *See* Section 16(a) of the Law, 11 P.S. §2216(a).

an indicated report of child abuse was filed on October 29, 1984. Petitioners requested that the Secretary of DPW expunge the indicated report pursuant to Section 15(d) of the Law, 11 P.S. §2215(d). After hearing on this matter, the Hearing Officer recommended that the request for expungement be denied. DPW's Office of Hearings and Appeals (OHA) adopted this recommendation in its order of January 21, 1988. A timely appeal was filed with this Court.

Our scope of review is, of course, limited to whether substantial evidence exists to support the necessary findings of fact, whether there has been an error of law or whether constitutional rights have been violated. *Children & Youth Services Division v. Department of Public Welfare*, 103 Pa. Commonwealth Ct. 616, 520 A.2d 1246 (1987). Substantial evidence as defined in the context of child abuse expungement proceedings is evidence that "so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom." *Id.* at 622-23, 520 A.2d at 1249.

The first issue presented for our review is whether substantial evidence exists to support the denial of expungement. Petitioners maintain that DPW failed to sustain its burden of proof.[4] We disagree.

The Hearing Officer considered the testimony of several witnesses. Shagum testified that in conducting her investigation she initially reviewed the FYS records regarding T.N. and petitioners. Shortly thereafter she interviewed petitioners and saw T.N. but did not question her about the source of her injuries. Shagum also called

---

[4] Section 2215(d) of the Law, 11 P.S. §2215(d) provides that the burden of proof in expungement proceedings shall be upon the appropriate Child Protective Service. In this matter, as noted previously, a DPW field representative conducted the investigation and therefore DPW is the burdened party herein.

for a multidisciplinary team meeting at Children's which was held on September 25, 1984. Based upon the medical evidence presented at the meeting and the information gathered in her investigation, Shagum filed the indicated report.

The Hearing Officer also considered the testimony of Patricia Crumrine, M.D., which was presented by trial deposition. Dr. Crumrine, a pediatrician with expertise in the diagnosis and treatment of child abuse, treated T.N. throughout her ten (10) day hospital stay[5] at Children's. It was her medical opinion that the severity of T.N.'s facial bruising was inconsistent with the petitioners' explanation that T.N. had accidentally fallen. Based upon the hospital records kept by nursing staff, as well as the negative results of extensive testing, Dr. Crumrine ruled out any organic cause for T.N.'s alleged falls. Most importantly, she opined that the severe facial bruising sustained by T.N. could not have resulted, as petitioners alleged, from the child falling, as of her own weight, against a kitchen cupboard. Noting that the petitioners never claimed that T.N. had fallen from any height, Dr. Crumrine was of the opinion that the medical evidence was clearly inconsistent with the explanation of causation given by petitioners.[6] Therefore, she concurred with another physician that T.N. be discharged

---

[5] T.N. was admitted to Children's by recommendation of a member of the neurology staff because petitioners indicated that T.N. had a history of frequent falls. The admission was for the purpose of assessing whether these alleged falls were related to some organic cause, such as seizures.

[6] Petitioners provided inconsistent versions of the events leading to T.N.'s injuries. In recounting the history of the child's alleged falls, petitioners indicated that T.N. had been taken to three (3) separate hospitals for treatment of injuries sustained on three separate occasions. This fact was taken into consideration during DPW's investigation.

from Children's with a diagnosis of trauma secondary to child abuse.

Karen Christman (Christman), Assistant Director of Clinical Social Work at Children's, also testified. She noted that petitioners had been inconsistent in their rendition of the events leading to the child's injuries. This witness was also of the opinion that the child's injuries were irreconcilable with the purported accidental injury.

The Hearing Officer, in his thorough discussion of the evidence in this case, stated that the uncontroverted testimony of Dr. Crumrine and Christman should be afforded great weight.[7] In issuing his recommendation that petitioners' request for expungement be denied, the Hearing officer concluded that:

> No medical information has been submitted to suggest that falling to the floor, or falling against the cabinet, or falling down and hitting her face on a toy chest would result in the severe bruising of the subject child's (sic) as evidenced by the photographs of the injury. (Exhibit C-1.)[8]

As noted previously, OHA adopted the Hearing Officer's recommendation to deny expungement.

Substantial evidence exists to maintain the indicated report of child abuse based upon the investigation conducted by Shagum and the available medical evidence. Section 3 of the Law, 11 P.S. §2203, defines "[c]hild abuse" as:

> serious physical or mental injury which is not explained by the available medical history as

---

[7] Although he never made an explicit credibility determination, it is implicit in the discussion of the medical evidence presented that he accepted the uncontroverted testimony of Dr. Crumrine. Therefore, we find it unnecessary to remand for an explicit finding of fact with respect to credibility.

[8] The photographs of the child illustrate severe bruising of her left eye as well as the right side of her face in general.

> being accidental ... of a child under 18 years of age, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents ... .

T.N. was three years of age when she sustained her injuries. The medical evidence presented indicates that the severe facial bruising sustained by T.N. constitutes serious physical injury not explained by the available medical history as being accidental. Both parents claim to have been present in the residence at the time T.N. sustained the severe facial injuries which resulted in her being admitted to Children's. Therefore, these injuries constitute abuse caused by the acts or omissions of her parents who have both been named as perpetrators.

Section 3 of the Law, 11 P.S. §2203, defines "[i]ndicated report" as:

> a report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare.

DPW maintains that when any of the three circumstances set out above are present that it is required by law to maintain an indicated report of child abuse. We must agree. The definition of an "indicated report" is worded in the disjunctive. Therefore, when DPW determines that substantial evidence of abuse exists based upon any one of the three forms listed above, it must maintain an indicated report. In the instant case, DPW, based solely upon the medical evidence which existed, had substantial evidence upon which to deny the expungement request. Petitioners' arguments center around the alleged incompleteness of Shagum's investigation. However, as the

Hearing Officer concluded, the medical evidence in this case indicated that the injuries sustained by T.N. could not be explained by the history given by petitioners. On that basis alone, the indicated report of child abuse was correctly maintained.

We now turn to petitioners' constitutional arguments. Petitioners maintain that the Law allows for a constitutionally defective burden of proof in expungement proceedings and that it denies persons adequate rights of confrontation. We reject these contentions as meritless.

The substantial evidence standard is properly applied in this appeal from an order of an administrative agency. *Children & Youth Services Division v. Department of Public Welfare,* 117 Pa. Commonwealth Ct. 601, 544 A.2d 101 (1988). The cases cited by petitioners which require higher standards of proof are those in which the severing of the parent/child relationship is involved.

We emphasize that this matter does not involve the custody of T.N. Instead, our decision today involves solely the maintenance of an administrative record in a highly confidential central register of child abuse. *See Cruz v. Department of Public Welfare,* 80 Pa. Commonwealth Ct. 360, 472 A.2d 725 (1984) (listing in a confidential registry in connection with an indicated report of child abuse is a detriment less severe than being denied the custody of one's children).

Petitioners' argument is based upon the premise that they had a protected interest in being able to adopt children and in being able to become foster parents. It is submitted by petitioners that because an indicated report of child abuse is maintained by DPW, they are forever precluded from adopting children and becoming foster parents.

Section 23.1 of the Law does not prohibit the selection of an adoptive parent or a foster care parent based upon the identification of that individual as a perpetrator

of an indicated report of child abuse. 11 P.S. §2223.1.[9] Section 2223.1(f)(1) and (2) of the Law does require prospective adoptive parents or prospective foster parents to provide certification as to whether they are named in a central register as perpetrators of an indicated report of child abuse. 11 P.S. §2223.1(f)(1) and (2). However, this does not absolutely preclude such persons from becoming adoptive parents or foster parents. Accordingly, because we have concluded that petitioners are not automatically denied the right to adopt children or become foster parents, we decline to address further the issues with respect to whether such a right is a protected interest which cannot be infringed upon without due process of law.

Finally, we dismiss petitioners' argument that the Law denies them adequate rights to confrontation. Petitioners were afforded a hearing where they were given an opportunity to present their case. Extensive evidence was presented and an adjudication made. We must reiterate the fact that this proceeding is administrative in nature and does not affect the custody of T.N. In closing, we quote the language of *L.W.B. v. Sosnowski*, 117 Pa. Commonwealth Ct. 120, 124, 543 A.2d 1241, 1242-43 (1988), wherein we emphasized that:

> [t]he Law seeks to protect children from abuse, not to punish alleged abusers. Section 2215(d) provides a process for implicated persons to request that a report be amended, sealed or expunged, and provides for an appeal of the Secretary's decision. (Footnote omitted.)

---

[9] Section 23.1(d) of the Law does prohibit an administrator of a child care agency from hiring a job applicant for specific child care positions if that applicant has been named as a perpetrator on a founded report of child abuse committed within the last five years. 11 P.S. §2223.1(d).

There has been no violation of petitioners' constitutional rights and the decision to maintain the indicated report of child abuse is supported by substantial evidence. Accordingly, we affirm.

ORDER

AND NOW, this 1st day of March, 1989, the order of the Department of Public Welfare in the above-captioned matter is affirmed.