581 A.2d 704

**PHILADELPHIA COUNTY DEPARTMENT OF HUMAN SERVICES, DIVISION OF CHILDREN AND YOUTH, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 1990.

Decided Oct. 23, 1990.

Guy Vilim, Chief Deputy City Sol., with him, M. Robin Maddox, Deputy City Sol., and Lynda H. Moore, Asst. City Sol., Philadelphia, for petitioner.

Kathleen Harrington, Asst. Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

CRAIG, President Judge.

The Philadelphia Department of Human Services (DHS) appeals a decision of the Pennsylvania Department of Public Welfare (DPW), expunging an indicated report of child abuse.

The pertinent facts as found by the DPW hearing officer are as follows. R.C. (W for wife) and B.C. (H for husband), are, respectively, the mother and father of U.C. (C for child), who was born on October 5, 1983 in India. W and C remained in India before joining H in the United States. H and W were husband and wife at the time of C's birth, but later separated. One month before C turned two-years old, W left H and took C to India. W left C in India with C's maternal grandparents. Following a custody dispute in India, C returned to the United States and resided with W, who denied H visitation rights with C.

In October 1986, H obtained a court order that granted him visitation rights on Saturdays and alternate Wednesdays. At that time, H had not seen C for approximately one year. The hearing officer found that C and H had two visits during which no unusual incidents occurred. On the third visit on November 23, 1986, which was to be an overnight visit at H's home, C became ill that evening with a cough, a fever, and vomiting. H contacted W regarding C's condition, and took C to the emergency room for an examination. H returned to his home with C and put C to bed. Later, W appeared at H's home with her mother and two police officers. W took C back to her home.

In February 1987 a judge appointed Dr. Davis of the Child Advocacy Unit of the Philadelphia Defender's Association to act as a social worker in the evaluation of C in custody proceedings. On January 4, 1988 the DPW's Office of Children, Youth and Families received a report of suspected child abuse alleging that H had abused C.

DPW filed an indicated report of child abuse on February 2, 1988. H requested that DPW expunge the report. DPW denied that request. On appeal from that denial, a hearing officer concluded that the DHS failed to meet its burden of proving that H had abused C under the Child Protective Services Law, Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§ 2201–2224.

DHS appeals that decision raising the following issues: (1) Whether the hearing officer improperly excluded hearsay evidence; (2) Whether necessary findings of fact are supported by substantial evidence; and (3) Whether the hearing officer erred as a matter of law in concluding that H did not abuse C under the Child Protective Services Law.

■ DHS challenges the hearing officer's refusal to consider the hearsay evidence of Dr. Davis and Mr. Hymans, the DHS caseworker assigned to the case. As the parties note, in *L.W.B. v. Sosnowski,* 117 Pa.Commonwealth Ct. 120, 543 A.2d 1241 (1988), this court upheld an indicated report of child abuse based on statements a child made to a caseworker. The court held that the hearsay testimony of a caseworker in a petition for expungement of an indicated report of child abuse case is admissible where the time, content and circumstances of the child declarant's statements provide sufficient indicia of reliability.

In that decision, the caseworker conducted separate preliminary interviews with the family members. During the preliminary interview, the child made statements which suggested that her father had abused her. Following that interview, the caseworker conducted a more thorough two-hour interview with the child during which the child recounted specific incidents of sexual abuse in detail. Al-

though demonstrative actions of the child at the interview rendered her statements even more reliable, the court noted that her statements alone were sufficiently reliable to constitute substantial evidence.

In this case, DHS offered the testimony of Dr. Davis, who testified as follows:

[A.] She said that he pinched her on the thigh and hit her on the thigh and that he touched her vagina and fondled her.

. . . .

Q. Did she, if you can remember, did she actually say vagina?

A. No. She lifted up her dress and demonstrated with her hand on her panty on the vagina.

Q. Did she say anything else about the sexual abuse?

A. She said that he called her a sexy lady.

Dr. Davis' testimony indicates that C made those statements approximately fourteen months after the incident of alleged child abuse occurred, and that the alleged incident took place only shortly after she turned three-years old.

DHS also offered the testimony of Mr. Hymans. His testimony indicates that he conducted one interview with C, which took place more than a year after the alleged incident of abuse. Mr. Hymans read from his report of indicated child abuse, in which he stated that C told him that H "touched her genitals and pinched her breasts and thighs."

In accordance with the decision in *L.W.B.*, the hearing officer determined that the time, content, and circumstances of C's statements to Mr. Hymans and Dr. Davis do not provide a sufficient indicia of reliability as to make the offered hearsay testimony of those witnesses admissible.

Nevertheless, DHS argues that the testimony of Dr. Davis and Mr. Hymans regarding their opinion as to whether C accurately recounted the alleged incidents of abuse, renders C's statements sufficiently reliable under *L.W.B.*

■ Although Mr. Hymans' and Dr. Davis' knowledge and experience lend weight to the credibility of their opin-

ions regarding the factual issue of abuse, a hearing officer's analysis with respect to the admissibility of the hearsay necessarily must include consideration of all the factors described in *L.W.B.* In reaching a decision on the admissibility of this type of hearsay, a hearing officer must not rely on the opinion of experts as to whether a child declarant's statement is reliable, but rather, the hearing officer should consider the statement in light of the time the child made the statement, the content of the statement, and the circumstances under which the child made the statement.

The hearsay testimony of objective experts in the area of child abuse may support a finding that the circumstances of a child declarant's statements are reliable. For example, a child declarant's statement to an objective caseworker provides a more reliable circumstantial setting than a child declarant's statement to a parent who is engaged in a custody battle. However, a statement must satisfy all three criteria of reliability—time, content and circumstances.

In this case, the hearing officer determined that the statements were not reliable under the *L.W.B.* criteria. The hearing officer's decision reflects her consideration of the specific factors in the case, including the span of time that the mother refused visitation rights to H, the lapse of time between the date of the alleged incident and the date C made the statements, and the manner in which the mother excluded H from C's life. Those factors support the hearing officer's finding that the time, content and circumstances of C's statements did not provide a sufficient indicia of reliability. Hence, the hearing officer did not err in refusing to admit the statements.

■ DHS next argues that H did not offer substantial evidence to rebut the expert opinions of Dr. Davis and Mr. Hymans. However, DHS had the burden of proof to establish that H abused C. The hearing officer, as fact finder, determines the weight and credibility of the witnesses. In this case, the hearing officer found H's testimony credible, and rejected the opinions of Dr. Davis and Mr. Hymans.

Hence, her finding that H did not abuse C is supported by substantial evidence.

Finally, DHS asserts that the hearing officer erred as a matter of law. However, as indicated above, substantial evidence supports the pertinent findings of fact. Those findings support the hearing officer's conclusion that B did not abuse U. Therefore, we affirm the hearing officer's decision expunging the indicated report of child abuse.

## ORDER

Now, October 23, 1990, the order of the Department of Public Welfare, dated November 17, 1989, expunging the indicated report of child abuse, is affirmed.