587 A.2d 889

**COUNTY OF DELAWARE, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (LANG), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 1990.

Decided March 1, 1991.

See also Pa.Cmwlth., 490 A.2d 20.

Charles S. Katz, Jr., Swartz, Campbell & Detweiler, Philadelphia, for petitioner.

Leonard V. Tenaglia, Richard, DiSanti, Hamilton & Gallagher, Media, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

County of Delaware (County) files a Petition for Review appealing an Order of the Pennsylvania Workmen's Compensation Appeal Board (Board) reversing a Referee's Decision and granting Zita Lang, widow (Widow) of Ernest Lang (Lang), Fatal Claim Benefits.

On December 10, 1978, Lang, employed as a Corporal for the Delaware County Court House and Park Police (Court House Police), was shot and killed attempting to thwart a robbery at Stanley's Bar in Chester, Delaware County, Pennsylvania. Lang was a patron in the bar when two men entered the bar and announced a robbery. At some point during the robbery, Lang pulled his personal revolver from his pocket and was killed in the ensuing gun battle.

Lang's Widow filed a Fatal Claim Petition which was dismissed by a Referee's Decision dated October 8, 1981. In his Decision, the Referee concluded that Lang was not within the course of his employment when he was shot and killed. The Referee's Decision was appealed to the Board which reversed, finding that Lang was acting within the course of his employment with the Court House Police. The Board remanded to the Referee so that the Referee could enter an award of compensation which the Referee did by Decision dated April 2, 1984. This Decision was then appealed to the Board, which affirmed the award of compensation, but remanded for the limited purpose of calculating the correct amount of compensation due because of concurrent employment. By Decision dated February 25, 1987, the Referee entered an appropriate compensation award. Following another appeal to the Board, a further

remand[1] and subsequent appeal, the Board, by Order dated February 26, 1990, reinstated and republished the Referee's February 25, 1987 Decision in its entirety.[2] It is the Board's final Order which is now before us for review.

Initially, the County contends that the Board erred as a matter of law by applying the inappropriate standard of review. The County argues that the Board erred in applying the capricious disregard of evidence standard instead of the substantial competent evidence standard.[3] The County argues that the capricious disregard standard applies only where the burdened party is the only party to present evidence and yet does not prevail. Here, they argue that both parties presented evidence, and thus, the substantial competent evidence standard should apply.

Lang's Widow admits that the Board's use of the "capricious disregard of competent evidence standard" was incorrect, citing that the proper scope of review for both the Board and this Court is whether the findings of fact are supported by *substantial competent evidence* and whether there has been a constitutional violation or an *error of law*.[4] *See Moonblatt v. Workmen's Compensation Appeal*

1. In its Order following the appeal of the Referee's February 25, 1987 Decision, the Board remanded for a reconsideration of the compensation rate.

2. The Board, in its final Order, also vacated that portion of the Referee's Decision granting post-minority dependency benefits for two of Lang's children. This issue is not before us.

3. The Board, in reversing the Referee, stated that its standard of review was "whether or not the Referee's findings were made as a result of a capricious disregard of competent evidence." (Reproduced Record (R.R.) p. 17a). The Board concluded that the "referee capriciously disregarded" evidence that Lang was acting within the course of his employment. (R.R. p. 19a).

4. Where, as here, both parties have presented evidence, the proper standard of review is the "substantial competent evidence" test enunciated by our Supreme Court in *Estate of McGovern v. State Employee's Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986), and this Court in *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987). The "capricious disregard" standard, however, applies only where the burdened party is the *only* party to present evidence and does not prevail before the agency. *Russell v. Workmen's Compensation Appeal Board (Volks-*

*Board (City of Philadelphia)*, 85 Pa.Commonwealth Ct. 128, 481 A.2d 374 (1984); *Holshue v. Workmen's Compensation Appeal Board (Robideau Express)*, 84 Pa.Commonwealth Ct. 253, 479 A.2d 42 (1984). Where the Board erred, Lang's Widow contends, was not in application of the wrong standard for factual review—capricious disregard or substantial evidence—but rather in not applying an error of law standard in reviewing the Referee's Decision that Lang was not acting within the course of his employment when he attempted to stop the robbery that resulted in his death.

It is well recognized that the issue of "[w]hether an employee is within the course of his or her employment when an injury occurs is a conclusion of law subject to our review." *Pypers v. Workmen's Compensation Appeal Board (Baker)*, 105 Pa.Commonwealth Ct. 448, 450, 524 A.2d 1046, 1048 (1987); *See also City of Pittsburgh v. Workmen's Compensation Appeal Board (Marunich)*, 108 Pa.Commonwealth Ct. 477, 529 A.2d 1196 (1987); *Peer v. Workmen's Compensation Appeal Board (B & W Construction)*, 94 Pa.Commonwealth Ct. 540, 503 A.2d 1096 (1986).

Even though the Board applied that incorrect standard of review, we also agree with Lang's Widow that a remand is unnecessary in that our scope of review is identical and tantamount to that of the Board. We will therefore review the Referee's decision to determine whether his legal conclusion that Lang was not acting within the course of his employment constituted an error of law.

The County contends that the Board erred as a matter of law in awarding compensation, since Lang was not acting within the course of his employment when he was killed as required under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act). The County argues that Lang, as a Court House Police officer, was not a true police officer in the sense that he was "on-duty" twenty-four hours a day. The County also contends that Lang had no

*wagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

authority to arrest someone off County property. Consequently, the County argues that Lang, while off-duty and drinking alcohol in a bar which was not County property, used his personal weapon to engage in an act for which he had no authority. As such, the County argues that he should be denied Fatal Claim Benefits.

Lang's Widow contends that the Board was correct in awarding compensation, because Lang was actually engaged in the furtherance of the affairs of his employer as provided by Section 301(c) of the Act. Lang's Widow argues that Lang was authorized to carry a weapon with him twenty-four hours a day, and was carrying out his duty to protect life and property and preserve the peace at the time he was killed. Lang's Widow argues that Lang was expected to take action to stop the commission of a crime, as this obligation was set forth in a duty manual which the officers used for guidance. Lang's Widow further points to the fact that following Lang's death, the entire County Council adopted a resolution commemorating Lang for his service and death while observing "his sworn duty."

Since Lang was killed while away from the employer's premises, the main issue before the Referee was whether Lang was killed while he was "actually engaged in the furtherance of the business or affairs of the employer" as provided by Section 301(c) of the Act. In determining this issue, the Referee must give this phrase a liberal construction. *Epler v. North American Rockwell Corporation*, 482 Pa. 391, 393 A.2d 1163 (1978); *Speight v. Burens*, 371 Pa.Superior Ct. 478, 538 A.2d 542 (1988). Moreover, Lang's Widow has the burden of establishing that Lang was actually furthering the employer's business or affairs where the injury occurs off the employer's premises. *Borough of Aldan v. Workmen's Compensation Appeal Board (Harold)*, 54 Pa.Commonwealth Ct. 622, 422 A.2d 733 (1980).

The Referee based his legal conclusion that Lang was not within the course of his employment with the County at the time of his death on several reasons. The Referee found that the Court House Police were created to guard only County grounds and properties, and that Stanley's Bar was

not County property. (R.R. p. 33a; Referee's Findings of Fact Nos. 13 and 15). The Referee also found that the Court House Police did not have general police powers, and that the officer's arrest power, even on County property, was akin to the privilege to arrest granted to private citizens. (R.R. p. 33a; Referee's Findings of Fact Nos. 6 and 8). Thus, the Referee concluded that Lang was not a true policeman with a sworn duty to enforce the law twenty-four hours a day. (R.R. p. 33a; Referee's Finding of Fact No. 7). The Referee based this conclusion in part on the testimony of County District Attorney Frank T. Hazel, who testified that the Court House Police had no authority off County property. (R.R. p. 196a; Referee's Finding of Fact No. 6).

The Referee also found it significant that the duty manual used by the Court House Police, which provided a guide to the officers in carrying out their duties, was never approved by County Council. (R.R. p. 33a; Referee's Finding of Fact No. 8). The Referee further found significance in the fact that Lang was drinking alcohol, which would be prohibited if he was actually on duty, and that the revolver Lang used was his own and not his service revolver. (R.R. p. 33a; Referee's Findings of Fact Nos. 1, 2 and 9).

Admittedly, the Court House Police force was established by a County Council Resolution pursuant to Section 426 of the Delaware County Home Rule Charter (HRC).[5] (R.R. pp. 186a–187a). The County Council set forth the functions and duties of the Court House Police in the Administrative Code for the County of Delaware (Code). The function set forth in the Code was essentially the same as provided by Section 426 of the HRC. *See* Footnote # 5. (R.R. p. 189a). Among the duties specified by the Code was to "detect and appre-

---

5. Section 426 of HRC provides that:
   Council shall establish a Department of Court House Police which shall maintain security, public safety and orderly conditions in respect to buildings and spaces comprising the County Court House complex, facilities and property, employe parking facilities, and such other duties as required to enforce general security in the Court House complex.
   323 Pa.Code § 426.

hend offenders and suspected persons on County property."
(R.R. p. 190a). Thus, under the HRC, the County Council
has the authority to establish the Court House Police force
only to maintain security and safety on County property.
Accordingly, we agree with the Referee's legal conclusion
that the Court House Police have no authority to act while
off of County property.

However, that does not end the inquiry as to whether
Lang is entitled to compensation. If his employer informed
him that he had such authority, even though he did not, and
required him to use that authority, the employer is bound
by such directions and cannot claim that the employee,
while following his directions, was not acting within the
course of his employment.

Here, Chief Edward C. Leiby (Chief Leiby), Chief of the
Court House Police, testified that he promulgated a duty
manual (Manual) which was used for many years to provide
direction and guidance to the officers in carrying out their
duties. (R.R. pp. 112a–113a). Section 1–1 of the Manual
provides the following introduction:

> Under the Constitution and Laws of the United States,
> the Commonwealth of Pennsylvania, and the County of
> Delaware, you, *as law enforcement officers, have the
> responsibility to protect life and property and to pre-
> serve the peace.* As a member of the Delaware County
> Court House and Park Police Department, *you have
> assumed a solemn obligation. This manual is intend-
> ed to provide guidance to you in carrying out your
> assigned duties.* It tends to touch briefly not only on
> your moral and legal obligations, but also the profession-
> al standards of the law enforcement field. It also enu-
> merates the rules of conduct to which you must adhere to
> at all times. This manual is designed to make you a
> better informed officer, and, by this very fact, make you
> a more competent and knowledgeable officer.

(R.R. p. 155a) (emphasis added).

Section 2–1 of the Manual provides the following guid-
ance as to the officers' authority:

Authority—The Delaware County Park Police Department has *full police authority to arrest, without warrant, any offender against the laws of the Commonwealth of Pennsylvania* and the ordinances of the County of Delaware *that they detect in the commission of such offense/s/.*

(R.R. p. 156a).[6]

Chief Leiby further testified that the Manual was given to members of County Council, but that no action was ever taken to approve or disapprove it. (R.R. pp. 115a, 129a, 132a). Moreover, Chief Leiby stated that the officers were unaware of any action by County Council with regard to the Manual. (R.R. p. 132a). Charles C. Keeler, Chairman of County Council, confirmed that no action was ever taken as to the Manual. (R.R. pp. 169a, 181a).

Chief Leiby testified that his officers do not have the power to effectuate an arrest off of County property, but they may apprehend someone they believe is committing a crime and attempt to get assistance of an officer with the authority to make the arrest. (R.R. pp. 146a–148a). He further elaborated as to the scope of this power to apprehend, stating that, as the introduction in Section 1–1 provides, "if they are a police officer, they are a police officer twenty-four hours a day, and if they observe a crime, they should take action." (R.R. p. 147a). James R. Bilbow, a Lieutenant with the Court House Police (Lieutenant Bilbow), testified that in accordance with the Manual, "our policy is if we see a crime being committed, we will act accordingly." (R.R. pp. 76a, 91a). Lieutenant Bilbow believed that Lang "was responding as a Delaware County Park Police officer as seeing a crime being committed" when he was killed. (R.R. p. 86a).

6. Section 2–1 of the Manual which defines the officers' authority seems to be in contradiction with Section 3–1 of the Manual, which provides that one of the basic functions is to "[d]etect and apprehend person/s/ found to be violating County, State, or Federal Laws while on County property." (R.R. p. 106a). However, Section 3–1 provides a list of sixteen basic functions, and as Chief Leiby and Lieutenant Bilbow testified, they are only the basic functions and not all of the functions performed by the Court House Police. (R.R. pp. 90a, 143a).

Chief Leiby also testified that the officers were permitted to take their revolvers home with them. (R.R. pp. 138a–139a). He stated that such permission was not in writing, but "was just a verbal authorization that they could carry their weapons home. It's a policy." (R.R. pp. 139a–140a). Chief Leiby further stated that as a police officer, Lang did not need a permit to carry his personal revolver with him. (R.R. p. 140a). Lieutenant Bilbow testified that it was an accepted practice that every officer carry his weapon twenty-four hours a day. (R.R. p. 76a).

A review of the evidence of record demonstrates that the Referee committed an error of law in failing to properly consider undisputed relevant facts that were necessary for a proper application of the standard of law. The evidence clearly demonstrates that Lang's power to arrest was limited to acts committed on County property. However, the officers themselves, because of statements made by Chief Leiby and instructions in the Manual, perceived the power to carry a weapon and intervene to stop the commission of a crime and apprehend the perpetrator off of County property as their sworn duty. Thus, Lang, killed while trying to stop the commission of a crime being committed off County property, was acting under the authority he received from his employer through Chief Leiby.

Further evidence of this fact is shown by a County Council Resolution unanimously passed two days following Lang's death, which provided in relevant part:

WHEREAS, Corporal Ernest L. Lang, Jr. was a member of the County of Delaware County House & Park Police Department; and

WHEREAS, Corporal Lang attempted to prevent an armed robbery and was confronted by two felons the morning of December 10, 1978; and

WHEREAS, *Corporal Lang recognized his sworn duty and attempted to protect the life and property of the helpless victims.* Gunfire erupted and Corporal Lang was struck down, mortally wounded by his assailants in

an outrageous act of lawlessness and a senseless insult to people of all communities; and

WHEREAS, Corporal Lang succumbed as a result of his grievous wound; and

WHEREAS, the residents of the County of Delaware, recognizing that death has claimed another martyr in the quest for law and order, join their prayers with all those throughout the County who mourn the loss of a devoted husband, father and valiant officer.

(R.R. p. 154a). (emphasis added). Thus, County Council itself perceived a sworn duty to protect life and property which transcended the officer's on-duty hours.

In *City of Pittsburgh v. Workmen's Compensation Appeal Board (Marunich)*, this Court granted benefits to an off-duty city police officer injured while trying to assist another off-duty officer while outside the city limits. An order of the employer stated that officers were on duty "at all times and must be prepared to act immediately on notice that their services are required, or, in all cases, needing immediate action coming to their attention." *City of Pittsburgh*, 108 Pa.Commonwealth Ct. at 480, 529 A.2d at 1197. We found that the officer was acting in furtherance of the employer's affairs because he was following the order.

Under the facts of the present case, we find that the Referee committed an error of law by failing to consider the undisputed facts when making his legal conclusion that Lang was not acting within the course of his employment at the time of his death. We find that Lang was furthering the affairs of the County by attempting to foil the commission of a crime, which he had reason to believe was his sworn duty.

Accordingly, we will affirm the Order of the Board.

## ORDER

AND NOW, this 1st day of March, 1991, the Order of the Pennsylvania Workmen's Compensation Appeal Board, dated February 26, 1990, is affirmed.

SILVESTRI, Senior Judge, dissenting.

Zita Lang, widow of Ernest Lafayette Lang (decedent), filed a fatal claim petition on September 24, 1979. The fatal claim petition alleged that on December 10, 1978, the decedent died as the result of being shot "when he tried to stop a robbery at a tavern in Chester Pa." and that the decedent "was a County Police Officer." The County filed an answer to the fatal claim petition in which it, *inter alia*, and as herein relevant, demanded "Proof of compensable injury arising in the course of employment...."

Hearings [1] were held before a referee, who, on October 8, 1981, dismissed claimant's fatal claim petition concluding that the decedent was not in the course of his employment at the time of his death. On November 10, 1981, claimant filed an appeal to the Workmen's Compensation Appeal Board (Board). The Board, by order dated September 8, 1983, reversed the Referee and granted claimant's petition concluding that the decedent was in the course of his employment at the time of his death. The Board remanded the matter to the Referee for a determination of the amount of compensation payable. Two additional appeals followed by remands. The matter was finally determined and the claimant awarded benefits on February 26, 1990 when the Board entered an order,

> that the Decision of the Referee dated February 25, 1987 is reinstated and republished in its entirety.

County of Delaware filed a timely petition for review from the Board's February 26, 1990 order.

On July 14, 1965, the County Commissioners of Delaware County by resolution created a "Protective Force of Courthouse and County guards, watchmen and park police." The resolution, as herein relevant, provided as follows:

1. Hearings held on September 27, 1979 (no testimony); December 3, 1979 (testimony taken); February 25, 1980 (no testimony); May 28, 1980 (testimony taken); August 20, 1980 (no testimony); November 10, 1980 (no testimony); February 4, 1981 (testimony taken; April 1, 1981 (testimony taken); July 20, 1981 (no testimony); concluded.

2. That the said protective force shall be a separate and unified department whose duties are and shall be to guard and protect all County and Institution District buildings, grounds and property, including County parks and recreation areas, prisons and detention places, and to enforce the provisions of the County Code and other laws relating thereto.

3. That said protective force shall be maintained, uniformed, equipped and designated as "Courthouse and Park Police", or by such other name or title as the County Commissioners shall from time to time decide and designate.

.        .        .        .        .

5. That the members of said protective force shall be under the control and charge of the County Commissioners and shall be assigned to such areas, buildings, grounds and property of the County and to such duties as the County Commissioners shall determine and direct from time to time.

R.R., at 186a–187a.

On May 20, 1975, Delaware County adopted a Home Rule Charter[2] effective the first Monday in January of 1976.[3] The Charter in Section 203[4] provides that, "The governing body of the county shall be the County Council and the legislative power of the county is vested in and exercisable only by the County Council...."

The Charter in Section 426[5] states: "Council shall establish a Department of Court House Police which shall maintain security, public safety and orderly conditions in respect to buildings and spaces comprising the County Court House complex, facilities and property, employe parking facilities, and such other duties as required to enforce general security in the Court House complex."

2. 323 Pa.Code §§ 101–1201.

3. The first Monday in January of 1976 was January 5.

4. 323 Pa.Code § 203.

5. 323 Pa.Code § 426.

On July 5, 1978 the Delaware County Council adopted an ordinance "designating procedures to be followed by the Council, the County Executive Director and other County officials and departments as mandated by the Home Rule Charter of the County of Delaware, repealing obsolete and inconsistent ordinances, and providing an effective date therefore [sic]." Under Section 10 Court House and Park Police, it is provided as follows:

## COURT HOUSE AND PARK POLICE

### FUNCTION

The Court House and Park Police shall maintain security, public safety and orderly conditions in respect to buildings and space comprising the County Court House complex, facilities and property, employee parking facilities and such other duties as required to enforce general security in the Court House complex and all other County property and facilities.

### SECURITY DUTIES

The security duties of the department shall be to:

(a) Maintain security, public safety, and orderly conditions in respect to buildings and spaces comprising the County Court House Complex and facilities, and such other duties as required to enforce general security in the Court House Complex and other County facilities;

(b) Detect and apprehend offenders and suspected persons on County property;

(c) Maintain records and files of crimes and criminals;

(d) Develop and conduct educational programs;

(e) Augment the prison force or the County Sheriff's Department in times of civil strife or labor disruptions or other emergencies threatening the security of the Court House and other County property.

(f) Maintain a system of employee identification cards;

(g) Develop a fire and safety manual and a fire warning system.

ADDITIONAL DUTIES

The following additional duties shall be undertaken by the Court House and Park Police:

(a) Control of traffic where necessary on County property;

(b) Observe and report areas needing repair in County Parks, and follow-up to insure repairs have been completed;

(c) Aid the County Solicitor in collection of facts germaine to lawsuits prosecuted by or against the County;

(d) Investigate accidents in which County vehicles are involved and provide all necessary documentation to insurance companies for related claims.

R.R., at 188a–190a.

The majority, after reviewing the testimony, concludes at page 892 of their opinion, "Accordingly, we agree with the Referee's legal conclusion that the Court House Police have no authority to act while off of County property." Notwithstanding this statement, the majority concludes the decedent was in the course of his employment at the time of his death and affirmed the February 26, 1990 order of the Board. The majority's conclusion is based on cited provisions in a "Manual", testimony relative thereto, and an expression of condolence by way of a resolution adopted by the County Council. I dissent.

## THE MANUAL [6]

Edward C. Leiby, Chief of Delaware County Courthouse and Park Police (Leiby) testified that prior to 1964 the County had a few watchmen guarding the Courthouse and Fair Acres, but no other policing of park areas or other buildings. In 1964 he was hired by the then Chairman of the County Commissioners to organize the Department for the particular purpose of policing County grounds and facilities and parks. At that time, in 1964, Leiby prepared

6. The alleged manual is not in evidence except for Section 1–0, Exhibit C–13, Section 2–0, Exhibit C–14, and Section 3–0, Exhibit D–1.

the manual, obtaining most of the information that was in effect before the manual was put together under one cover.

As the record demonstrates, the County Commissioners of Delaware County did not create the Courthouse and Park Police until July 14, 1965. Admittedly, Leiby did not present the "Manual" to the County Commissioners until 1975. He testified as follows:

Q  Now, the duty manual which has been prepared here, was that presented to anyone else in the county for approval or review prior to its institution or after its institution? .

A  It was given to the County Commissioners prior to the Home Rule Charter.

Q  When was that done, sir?

A  The Home Rule Charter was in '76, it must have been in '75. Copies were given to each of the three County Commissioners for their information.

R.R., at R.R. 128a–129a.

The Manual was never approved by the County Commissioners. There is no evidence that the alleged manual was ever presented to the County Council after the Home Rule Charter became effective on January 5, 1976; in any event, the record is devoid of any approval of the alleged Manual by either the County Commissioners prior to January 5, 1976 or by the County Council after January 5, 1976.

Additionally, Leiby points to no directive or other authority from either the County Commissioners after July 14, 1965 and prior to January 5, 1976, or from the County Council after January 5, 1976, authorizing him to prepare and promulgate a manual delineating the powers and duties of the Courthouse and Park Police.

Both the resolution of July 14, 1965 and the Ordinance of July 5, 1978 specifically limited the physical area where the Courthouse and Park Police were to function to the county courthouse and other property and facilities of the County. Significantly, their security duties relating to "offenders" is stated to be:

Detect and apprehend offenders and suspected persons on County property.

Assuming, arguendo, that the Manual was in effect, it must be read in conjunction with the resolution of 1965 and ordinance of 1978. Where, as here, it is contended that one of two or more documents govern and they are not exclusive, then they must be read together. 1 Pa.C.S. § 1932. In so doing, the Courthouse and Park Police had authority to detect, apprehend and arrest, limited only to the physical area of Delaware County property and facilities.

## THE CONDOLENCE RESOLUTION [7]

What has been written under "The Manual" also demonstrates that the condolence resolution adopted by the County Council relative to the decedent, after his death, does not extend the authority of the Courthouse and Park Police beyond the County property and facilities.

7.            COUNCIL OF DELAWARE COUNTY
                  Media, Pennsylvania
                        RESOLUTION
   WHEREAS, Corporal Ernest L. Lang, Jr. was a member of the County of Delaware Court House & Park Police Department; and
   WHEREAS, Corporal Lang attempted to prevent an armed robbery was confronted by two felons the morning of December 10, 1978; and
   WHEREAS, Corporal Lang recognized his sworn duty and attempted to protect the life and property of the helpless victims. Gunfire erupted and Corporal Lang was struck down, mortally wounded by his assailants in an outrageous act of lawlessness and a senseless insult to peoples of all communities; and,
   WHEREAS, Corporal Lang succumbed as a result of his grievous wound; and
   WHEREAS, the residents of the County of Delaware, recognizing that death has claimed another martyr in the quest for law and order, join their prayers with all those throughout the County who mourn the loss of a devoted husband, father and valiant officer.
   NOW, THEREFORE, BE IT RESOLVED, that we, the Council of Delaware County, while bowing to the infinite judgment of Divine Providence in taking from his family and friends and from all worldly affairs Corporal Ernest L. Lang, Jr., hereby express our deepest sympathy and condolences to his beloved wife and four children and offer this Resolution as evidence of the sincere sentiments of this legislative body.
                  (Signed by the
             Council of Delaware County)
Proclaimed December 12, 1978

There is further reason not to give effect to the condolence resolution as given by the majority. The Home Rule Charter in section 409 [8] is as follows:

Council shall decide which actions will be by ordinance and which by resolution except that acts of *permanent policy,* and acts which provide for raising revenue, appropriating funds or incurring indebtedness, and acts which provide a penalty or establish a rule or regulation for the violation of which a penalty is imposed, *shall be by ordinance.* (Emphasis added.)

To give to Courthouse and Park Police the authority of police officers to apprehend, detain and/or arrest for criminal conduct on non-County property and facilities is a permanent policy and cannot be effectuated directly or indirectly by way of a County Council resolution.[9] This is particularly so where the resolution is for the expression of condolences and not for establishing policy.

I would vacate the February 26, 1990 order of the Board and reinstate the Referee's Order of October 8, 1981 dismissing the claimant's fatal claim petition.

8. 323 Pa.Code § 409.

9. It is to be noted that the County Council, in adopting the functions, security duties and additional duties of the Court House and Park Police, did so by ordinance. R.R. at 188a–190a.