636 A.2d 1254

**MUNICIPALITY OF BETHEL PARK, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (William H. WILLMAN, Deceased, and Carol Willman, Widow), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1993.

Decided Jan. 7, 1994.

Michael P. Sosso, for petitioner.

Roy F. Walters, Jr., for respondent Willman.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Municipality of Bethel Park (Employer) appeals the decision of the Workmen's Compensation Appeal Board (Board) affirming an award of workmen's compensation survivor's benefits to Carol Willman (Claimant) upon the death of her husband, William H. Willman (Decedent).

On September 17, 1985, Decedent suffered a fatal myocardial infarction (heart attack) and collapsed at Claimant's feet in the kitchen of his Bethel Park home. Earlier that day, Decedent, a twenty-one year veteran of the Bethel Park Police Department, had begun a five-day vacation and had been off-duty since that morning. Claimant filed a claim petition for workmen's compensation benefits, contending that Decedent's heart attack was caused by his engaging in police related activity just prior to his death. Employer answered denying that Decedent was acting within the course and scope of his employment when he suffered the fatal heart attack.

At the referee's hearing, Claimant testified that she and Decedent had lived adjacent to a hilly, wooded, municipal park which had been the scene of increasing criminal activity. She testified that in the months preceding Decedent's death, there

had been numerous instances of illegal drug use, underage drinking and arson in that area of the park just behind their house and Decedent had frequently gone back into the area to investigate unusual happenings. Claimant testified that on the evening of September 17, 1985, Decedent was watching television when she left the house to go grocery shopping at approximately 7:45 p.m.. She stated that when she returned at approximately 9:00 p.m., Decedent was apparently not home. However, as she started to put groceries away, Decedent entered the house carrying a PR–24 police baton[1] through a kitchen door leading to the back yard. Claimant testified that upon entering the house, Decedent was flushed, breathing heavily and sweating and that she had asked him what he had been doing out in back of their house, to which he responded that he had "seen a light back there" and went to check. (N.T. December 19, 1988, at 58). Claimant then testified that she had asked Decedent who it was and that he answered "punks, they ran." (N.T. December 19, 1988 at 58). Moments later, Decedent collapsed.

Claimant presented the testimony of several neighbors who corroborated her testimony as to the high level of criminal activity within the park as well as testimony that Bethel Park police officers routinely responded to situations requiring the presence of a police officer even when off-duty and that this practice had been both condoned and encouraged by police officials. Finally, Claimant presented the expert testimony of Dr. Barry Uretsky, M.D., who testified that Decedent having gone into the wooded area of the park on the night of September 17, 1985, caused him to suffer the fatal heart attack.

Testifying for the Employer, Joseph Kletch, Chief of the Bethel Park Police Department, stated that Decedent was not on duty on the evening of September 17, 1985, and that Department policy did not require that off-duty officers perform police duties. He conceded that off-duty police officers

---

1. A PR–24 police baton is a defensive weapon carried by officers certified in its use. Decedent had been certified in the use of the PR–24 on November 1, 1983.

were required to carry their credentials, but testified that in contrast to the policy instituted by his predecessor, he did not require officers to carry weapons while off duty and would not have expected Decedent to investigate criminal activity in the park unless he was normally scheduled for duty. In addition, Employer presented the expert testimony of Richard Heppner, M.D., who stated that Decedent suffered from Atherosclerotic Cardiovascular Disease and that his death was the result of the natural progression of that disease rather than any activity he might have engaged in prior to his death.

The referee found the testimony offered by Claimant to be credible and found that immediately prior to his heart attack, Decedent had been investigating potential criminal activity within the course and scope of his employment. From the referee's award of benefits, Employer appealed to the Board, contending that the only evidence regarding Decedent's activities prior to his death was hearsay and not sufficient upon which to base a finding of fact. The Board affirmed the referee's decision, reasoning that Decedent's statements to his wife as to his immediate pre-heart attack activities fell under the *res gestae* exception to the hearsay rule because they were a "verbal act." [2] This appeal followed. [3]

Employer contends that the only evidence supporting the finding that Decedent was investigating potential criminal activity in the park just prior to suffering his heart attack is Claimant's testimony as to the statements made to her. Employer argues that this is hearsay that does not fall under any

**2.** We note that the Board mischaracterized the statements at issue as a "verbal act." As defined a "verbal act" is a statement which creates legal rights, duties or responsibilities offered for their legal significance alone. *Cleland Simpson Co. v. Workmen's Compensation Appeal Board (Decker and Moosic Borough)*, 128 Pa.Commonwealth Ct. 62, 562 A.2d 981, *appeal after remand*, 130 Pa.Commonwealth Ct. 77, 566 A.2d 1282 (1989).

**3.** Our scope of review is limited by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether the findings of fact are supported with substantial evidence, whether the Board made an error of law, or whether the Employer's constitutional rights were violated. *Bailey v. Workmen's Compensation Appeal Board (Lawton Feed and Supply, Inc.)*, 105 Pa.Commonwealth Ct. 106, 523 A.2d 415 (1987).

recognized exception and was insufficient both to support the referee's finding of fact and to permit Claimant's expert to offer a competent opinion as to the cause of Decedent's heart attack. It also contends that even if Decedent's statements were within an exception to the hearsay rule and he had been engaged in such activity, he did so not while he was on duty, but in furtherance of his own interests rather than those of the Bethel Park Police Department. Claimant contends that the statements fall under the *res gestae* exception to the hearsay rule and further, that regardless of his off-duty status, he was acting as a Bethel Park Police Officer when he engaged in this activity.

■ Pursuant to Section 422 of The Pennsylvania Workmen's Compensation Act (Act),[4] hearsay evidence is admissible in a workmen's compensation proceeding, but, if properly objected to, may not support a finding of fact standing on its own. *Flanagan v. Workmen's Compensation Appeal Board (U.S. Steel Corp.),* 143 Pa.Commonwealth Ct. 92, 598 A.2d 613 (1991). Because the testimony regarding Decedent's statement is hearsay[5] and the only evidentiary support for the referee's finding of fact, the issue presented is whether these statements fall within some exception to the hearsay rule.

■ While the Board found that Decedent's statements fell within the *res gestae* exception to the hearsay rule, *res gestae* is no longer itself a specific hearsay exception. Rather, it is a generic term which encompasses four distinct exceptions: (1) declarations as to present bodily conditions; (2) declarations as to present mental states or emotions; (3) excited utterances; and (4) present sense impressions. *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979). Decedent's statements did not concern his mental state or bodily condition, and because they did not pertain to an exciting event evident on the record they are not excited utterances. *Township of*

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834.

5. Hearsay is defined as an out of court statement testified to in court and offered to prove the matter asserted in the statement. *MRF v. Department of Public Welfare,* 141 Pa. Commonwealth Ct. 146, 595 A.2d 644 (1991).

*Haverford v. Workmen's Compensation Appeal Board (Angstadt)*, 118 Pa.Commonwealth Ct. 467, 545 A.2d 971 (1988). Because these statements were made immediately after the activities they describe, at issue is whether these statements fall within the present sense impression exception to the hearsay rule, and what is required to meet that exception.

■ The present sense impression exception has been slow in developing and has only recently been recognized as an exception to the hearsay rule. This exception was first espoused by Professor James B. Thayer in *Bedingfield's Case—Declarations as Part of the Res Gestae*, 15 Am.L.Rev. 1 (1881), where he concluded that contemporaneous statements pertaining to any event, whether exciting or not, fell within the *res gestae* exception because the assurance of reliability stemmed not from the excitement of the circumstances but rather from the spontaneity of the utterance. What caused the exception's widespread acceptance was an article by Edmund Morgan, *Res Gestae*, 12 Wash.L.Rev. 91 (1928), in which he advocated that exception be made for all spontaneous statements based solely on the contemporaneousness factor:

> The declaration is 'instinctive rather than deliberative—in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action. These are the indicia of verity which the law accepts as a substitute for the usual requirements of an oath and opportunity for cross-examination.'

*Id.* at 96, citing, *Illinois Central R.R. Co. v. Lowery*, 184 Ala. 443, 63 So. 952 (1913). It was this formulation that was adopted by the Federal Rules of Evidence.[6] However, as to whether the exception should be adopted by state courts, another commentator, suggested that in addition to the element of contemporaneousness, there should also be some

---

**6.** F.R.E. 803(1) provides that:

> A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter....

is excepted from the hearsay rule. The Advisory Committee Note to the rule expressly points to Morgan and his analysis as the basis for the rule.

independent corroboration of the statement before it can be admitted. Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay,* 66 Iowa L.Rev. 869 (1981). Whether corroboration is needed in addition to contemporaneousness has been a subject of dispute between state jurisdictions. Compare, *State v. Case,* 100 N.M. 714, 676 P.2d 241 (1984), and *Hewitt v. Grand Trunk W. R.R.,* 123 Mich.App. 309, 333 N.W.2d 264 (1983) (corroboration required), with *People v. Brown,* 80 N.Y.2d 729, 594 N.Y.S.2d 696, 610 N.E.2d 369 (1993), and *Booth v. State,* 306 Md. 313, 508 A.2d 976 (1986) (no corroboration required). In this case, if corroboration is needed for Decedent's statements to fall within the present sense impression exception, the statements are insufficient upon which to base a finding because no such corroboration is present.

Our Supreme Court first employed the exception in *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974), a plurality opinion which relied on Morgan and Federal Rule of Evidence 803(1) for the proposition that there should be a hearsay exception for declarations concerning non-exciting events either made contemporaneously or immediately after the event is perceived. *Id.* at 117, 326 A.2d at 389. In *Coleman,* a murder victim's mother testified to the contents of a telephone conversation she had with the victim in which the victim indicated that the appellant was going to disconnect the telephone and kill her. *Id.* at 114, 326 A.2d at 387. The plurality adopted the Morgan rational that the assured reliability of a statement comes from it being made without time for retrospective deliberation and found that the conversation was a contemporaneous account of the event taking place. *Id.* at 118, 326 A.2d at 390. However, without stating that anything other than this contemporaneousness was required, the Court went on to note that the appellant's admission that he had argued with the deceased and the mother's hearing his voice in the background corroborated the hearsay declaration. *Id.*

The exception was not officially adopted by the Supreme Court until its decision in *Commonwealth v. Peterkin,* 511 Pa.

299, 513 A.2d 373 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987), when, citing *Coleman,* the Court held that a description of a non-exciting event made either during the event or immediately thereafter was to be admissible under the present sense impression exception. *Id.* There, the Court made no mention of whether there was any corroboration to the statement and relied solely on its contemporaneousness. While some subsequent Superior Court cases have held that corroboration is required before a declaration can be admitted under the exception, see, e.g., *Hreha v. Benscoter,* 381 Pa.Superior Ct. 556, 554 A.2d 525, *allocatur denied,* 524 Pa. 608, 569 A.2d 1367 (1989); *Commonwealth v. Blackwell,* 343 Pa.Superior Ct. 201, 494 A.2d 426 (1985), its most recent decisions mention no such requirement. *Bonavitacola v. Cluver,* 422 Pa.Superior Ct. 556, 619 A.2d 1363 (1993); *Commonwealth v. Harper,* 419 Pa.Superior Ct. 1, 614 A.2d 1180 (1992), *allocatur denied,* 533 Pa. 649, 624 A.2d 109 (1993); *Smith v. Brooks,* 394 Pa.Superior Ct. 327, 575 A.2d 926 (1990).

We believe that in *Peterkin,* our Supreme Court adopted the rational that contemporaneousness alone insures reliability sufficient to counterbalance a statement's hearsay nature. Accordingly, whether a statement comes within the present sense impression exception depends solely on whether it was made contemporaneously with the event described and there is no requirement of corroborating evidence.

▌ As to the application of this formulation to the Decedent's statements, the referee made, and there was sufficient evidence of record to support, the reasonable inference that Decedent made the statements at issue to Claimant immediately after he returned from his activities in the park. He had entered the house from the back door leading to the park carrying his police baton, exhibited the outward appearance of one who had just been engaged in unusual physical activity and his statements were in response to Claimant's questioning of these things.[7] Because these statements were made imme-

7. A declaration made immediately after an event is perceived is no less spontaneous because it comes in response to a question. *Commonwealth v. Noble,* 371 Pa. 138, 88 A.2d 760 (1952).

diately after the event described, they come within the present sense impression exception to the hearsay rule and the referee could properly base his findings on them.[8]

■ Employer next contends that even if Decedent had gone into the park and that activity caused his death, the referee erred in finding that he was furthering its interests because he was off-duty and there is no official policy compelling off-duty police officers to engage in police work. Employer reasons that under our decisions in *City of Pittsburgh v. Workmen's Compensation Appeal Board (Marunich)*, 108 Pa.Commonwealth Ct. 477, 529 A.2d 1196 (1987) and *County of Delaware v. Workmen's Compensation Appeal Board (Lang)*, 138 Pa.Commonwealth Ct. 276, 587 A.2d 889 (1991), an off-duty police officer who is injured through involving himself in a criminal incident is not within the course and scope of their employment and not entitled to compensation for that injury unless there is an official employer policy mandating that they perform police functions regardless of their duty status. We disagree.

While it is true that in *City of Pittsburgh* we relied on an official regulation that required off-duty officers to intervene in criminal situations, in *County of Delaware*, the policy relied on was admittedly unofficial as it had not been adopted by the County Commissioners. In *County of Delaware*, the chief of the Delaware County Park Police had issued to all officers a written policy advising them that they were law enforcement officers having

"full police authority to arrest, without warrant, any offender against the laws of the Commonwealth of Pennsylvania and the ordinances of the County of Delaware that they detect in the commission of such offense/s/."

**8.** Because the referee's findings in this regard were supported with substantial competent evidence, Claimant's expert properly relied on the facts underlying them in rendering his opinion. Employer's contention that Claimant's expert testimony was incompetent is therefore without merit. *Mauger v. Workmen's Compensation Appeal Board (Waltz)*, 143 Pa.Commonwealth Ct. 198, 598 A.2d 1035 (1991).

*Id.* at 283, 587 A.2d at 893. In that case, an off-duty courthouse and park police officer was shot and killed when he intervened in the robbery of bar not within the territorial jurisdiction of his police department. *Id.* Even though the officer had no jurisdiction and the policy promulgated by the chief of the courthouse police was unofficial, because the officers of that force "perceived the power to . . . intervene to stop the commission of a crime" while off-duty due to the policy as it was generally understood, the officer was furthering the interests of the county at the time he was killed and entitled to benefits under the Act. *Id.* at 284, 587 A.2d at 893. The focus therefore is not whether there was an official policy mandating that off-duty Bethel Park Police were to consider themselves responsible to intervene to prevent a crime, but whether the Employer encouraged them to do so, even if unofficially.

In this case there were no less than five witnesses who testified as to an increasing amount of criminal activity in the park behind Decedent's house in the Summer of 1985, and that Decedent had often patrolled the area both on and off-duty.[9] William Young, who was a Bethel Park Police Officer at the time of Decedent's death testified that under Chief Walter Dabney, who served as Police Chief until 1981, officers were required to carry both their identification and sidearm at all times and that it was the policy of the department that one was to consider himself a police officer 24 hours a day, regardless of whether actually assigned to duty. (N.T. April 28, 1989 at 8–9). He testified that while Chief Kletch, who took over in 1981 changed the firearms policy to make it discretionary whether to carry a weapon off-duty, no change was made in the policy that officers were to be ready for duty 24 hours a day, and cited numerous examples of occasions when he and other officers became involved in criminal activity while off-duty and were encouraged in their efforts. (N.T. April 28, 1989 at 8–10, 30–31). Chief Kletch admitted that he

9. N.T., August 11, 1989, at 12–21; Deposition of George Barton at 4; Deposition of Gertrude Barton at 6,7; Deposition of Gregg Schaff at 3; Deposition of Louise Cummins at 3–4; Deposition of William Young at 3–6.

never changed the involvement policy for off-duty officers from that instituted by Chief Dabney. (N.T. January 19, 1990 at 33–34).

This evidence indicating that it was both customary and encouraged that an off-duty police officer involve himself in criminal investigations was sufficient for the referee to find that the Decedent was authorized to investigate criminal activity regardless of whether he was off-duty. Therefore, the referee did not err when he concluded that Decedent was in furtherance of the Employer's interests when he suffered his heart attack.

Accordingly, we will affirm the Order of the Board.

## ORDER

AND NOW, this 7th day of January, 1994, the order of the Workmen's Compensation Appeal Board, No. A91–2680, dated December 16, 1992, is affirmed.

SILVESTRI, Senior Judge, dissents.